## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARION COSTER, for herself <br> and derivatively on behalf of <br> UIP COMPANIES INC. <br> 1025 Eldorado Avenue <br> Clearwater, FL 33767 <br><br>         *Plaintiffs*, <br><br>     v. <br><br> STEVEN F. SCHWAT <br> 4518 Drummond Avenue <br> Chevy Chase, MD 20815 <br><br> PETER J. BONNELL <br> 2400 16th Street, NW <br> Apt. 707 <br> Washington, DC 20009 <br><br> STEPHEN E. COX <br> 9608 Hillridge Drive <br> Kensington, MD 20898-3120 <br><br> and <br><br> SCHWAT REALTY LLC <br> 4518 Drummond Avenue <br> Chevy Chase, MD 20815 <br><br>         *Defendants*, <br><br> and <br><br> UIP COMPANIES, INC. <br> 140 Q Street, NE, Suite 140B <br> Washington, DC 20002 <br><br>         *Nominal Defendant*. | Civil Action No. 18-CV-1995 <br><br> **COMPLAINT AND JURY DEMAND** |

## VERIFIED AMENDED COMPLAINT
## FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiff Marion Coster ("Plaintiff" or "Mrs. Coster"), for herself and derivatively on behalf of UIP Companies, Inc. ("UIP" or the "Company"), by and through undersigned counsel, hereby alleges as her complaint as follows:

## NATURE OF THE ACTION

1.      Plaintiff Marion Coster is a 50% stockholder in UIP—headquartered in the District of Columbia—co-founded by her late husband, who died in April 2015. UIP is a real estate investment and development company specializing in multi-family properties in the Washington, D.C. metropolitan area.

2.      Defendants Steven Schwat ("Schwat"), Peter Bonnell ("Bonnell"), and Stephen Cox ("Cox") (collectively, the "Director Defendants") are all members of the Board of Directors of UIP and, as such, owe fiduciary duties to Mrs. Coster. Defendant Schwat Realty LLC is the stockholder of UIP who has been in control of the Company at all relevant times, and thus has fiduciary duties to Mrs. Coster in her capacity as a stockholder.

3.      The Director Defendants have breached their fiduciary duties to Mrs. Coster, aided and abetted by Defendant Schwat Realty LLC, whose sole member is Defendant Schwat. Since Mr. Coster's death in April 2015, Defendants have engaged in a brazen and unlawful scheme to deny Mrs. Coster, an elderly widow, any financial remuneration from her 50% ownership in UIP, any role in the affairs and governance of UIP, and any real visibility into the considerable financial success of the Company. At the same time, Defendants have enjoyed significant financial remuneration from UIP and have used the Company, in substantial part, to further their own financial investments that confer no benefit to Mrs. Coster—all during a period of time in which UIP has thrived in a booming and lucrative D.C.-area real estate market.

4.      Additionally, on August 15, 2018, the Director Defendants wrongfully and illegally diluted Mrs. Coster's ownership interest in UIP by voting to issue 33 1/3 shares of UIP

- 2 -

stock to Defendant Bonnell—a UIP Board member and insider—for a small fraction of its fair market value. The primary purpose of that sale was to moot a lawsuit pending in the Delaware Chancery Court filed by Mrs. Coster in June 2018 seeking appointment of a custodian, pursuant to Delaware statute, to oversee UIP due to a deadlock between the two stockholders—Mrs. Coster and Defendant Schwat Realty LLC—over the election of Board members.  The illegality of that putative stock issue is now the subject of a second lawsuit in the Delaware Chancery Court in which Mrs. Coster seeks to invoke the Chancery Court's equitable powers to unwind the sham sale to Defendant Bonnell.

5.      As detailed below, Defendants have improperly placed their own interests ahead of those of Mrs. Coster for years. Defendants have violated their fiduciary duties and caused substantial pecuniary harm to Mrs. Coster.  In addition to compensatory damages, Mrs. Coster seeks punitive damages because Defendants' misconduct has been undertaken with malice against Mrs. Coster and with a deliberate intention to harm her pecuniary interests and legal rights.  Given the bad faith conduct of the Defendants, Mrs. Coster further seeks declaratory and injunctive relief: (a) precluding each Defendant from seeking or accepting indemnification, directly or indirectly, from UIP for any judgment in this action; and (b) requiring, in the event UIP advances or reimburses attorneys' fees and costs for any one or more Defendants in connection with this action, that each Defendant reimburse UIP for the total amount of such advanced or reimbursed attorneys' fees and costs within thirty days of entry of judgment.

## THE PARTIES

6.      Plaintiff Marion Coster is a resident of Florida and a stockholder in UIP.

7. Defendant Steven Schwat is a resident of Maryland and the President and Chairman of the Board of UIP, which has its principal place of business in the District of Columbia and sometimes operates under the name "Urban Investment Partners."

8. Defendant Peter Bonnell is a member of the Board of Directors of UIP and a senior-level manager of UIP. Defendant Bonnell is a resident of the District of Columbia.

9. Defendant Stephen Cox is a member of the Board of Directors of UIP and Chief Financial Officer and Secretary of UIP. Defendant Cox is a resident of Maryland.

10. Defendant Schwat Realty LLC is a Maryland limited liability company whose sole member, upon information and belief, is Defendant Schwat; its principal place of business is at 4588 Drummond Avenue, Chevy Chase, MD 20815.

11. Nominal Defendant UIP Companies, Inc. is a Delaware corporation with its principal place of business in the District of Columbia.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and attorneys' fees.

13. Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and 1401 because a substantial part of the events and omissions giving rise to the claims in this action occurred in the District of Columbia and, alternatively, because, Defendant Bonnell's principal place of residence is in the District of Columbia.

## FACTUAL BACKGROUND

### A.  Formation of UIP

14.      In or about 2007, three individuals formed UIP: Wout Coster ("Mr. Coster"), Defendant Steven Schwat, and Cornelis Bruggen ("Mr. Bruggen").  Each controlled 33 1/3 shares through intermediate entities (Coster Realty LLC, Defendant Schwat Realty LLC, and Bruggen Realty LLC).

15.      Mr. Bruggen left the Company in 2011 and his stock was bought back by the Company sometime thereafter.  Sixty-six and 2/3 shares remained outstanding.

16.      Defendant Schwat is the beneficial owner of 33 1/3 shares of common stock of the Company.  He owns his shares through Schwat Realty LLC.

17.      Following Mr. Coster's death in April 2015, Mrs. Coster became the beneficial owner of the 33 1/3 shares of UIP stock owned by Coster Realty LLC through a marital trust established for the sole benefit of Mrs. Coster. On January 1, 2017, the shares owned by Coster Realty LLC were transferred to Mrs. Coster, who is now the record and beneficial owner of those shares.

### B.  The Company's Considerable Financial Success

18.      From 2007 until his death in April 2015, Mr. Coster was heavily involved in the management and operations of UIP and its affiliated entities.  The Company was, and continues to be, very successful.  According to its website, "[s]ince its inception, UIP has invested more than $1 billion in the D.C-area real estate market, acquiring, renovating, selling and owning more than 5,000 rental and condominium units."

19.    The Company's website notes that its "current portfolio of more than 2,400 units in DC and MD is managed primarily by UIP Property Management, Inc." The website further states that "[c]onstruction and renovations are performed by UIP General Contracting, Inc."

20.    UIP Property Management, Inc. ("UIP PM") and UIP General Contracting, Inc. ("UIP GC") used to be separate, stand-alone companies 50% owned by Mrs. Coster and Schwat Realty LLC, either directly or through intermediate entities. In response to recent requests by Mrs. Coster for books and records relating to UIP PM and UIP GC, the Company has claimed that UIP wholly owns both UIP PM and UIP GC.

21.    The revenues of UIP GC are substantial, exceeding $22 million in 2016 alone. UIP PM enjoys a steady, substantial, and growing monthly revenue stream from fees it charges to manage the multi-unit buildings containing the 2,400 units owned by UIP or its affiliates.

22.    Since Mr. Coster's death in 2015, Defendants have exercised dominion and control over the management and operations of UIP, and its putative subsidiaries, UIP PM and UIP GC.

23.    UIP—and UIP PM and UIP GC—have benefitted enormously from the real estate boom in the D.C. area that has continued since approximately 2011. In the last three years alone, UIP has been involved in numerous high-dollar real estate transactions, including the following:

- purchase of a 266-unit apartment building in January 2018 for $95.5 million;

- purchase of a 212-unit apartment building in Gaithersburg, Maryland in fall 2017 for $31 million;

- partnership with another entity to renovate two Howard University dorms in summer 2017 in a $50 million project;

- purchase of a residence hall from George Washington University in summer 2015 for a planned $80 million renovation;

- purchase of an 81-unit apartment building in Northeast Washington, D.C. in summer 2015 for a planned $7 million renovation;

- purchase of a 76-unit apartment building in Northwest Washington, D.C., for a planned $18 million renovation project;

- purchase of a 100-unit apartment building in Northwest Washington, D.C. for $42 million;

- a planned $118-million construction project of an apartment building in Southwest Washington, D.C. to begin in the fall of 2018, reported as "the largest single transaction in the company's history."

**C. Defendants' Prevention of Mrs. Coster's Participation in the Financial Success of UIP**

24.    According to the Company's 2016 tax return, in 2016, Defendant Schwat received $365,000 in salary from the Company, and Defendant Bonnell, a Senior Vice President of the Company, received $200,000 in salary. Upon information and belief, in addition to generous salaries, Defendants each have received other remuneration and benefits from UIP.  Each of these Director Defendants' principal place of work is at UIP's offices in the District of Columbia.

25.    Despite numerous requests by and on behalf of Mrs. Coster, the Company has not provided her with information sufficient to determine what other benefits and remuneration Defendants have received from the Company or its subsidiaries, or exactly how much Defendants were paid directly in salary by the Company in 2015 and 2017.  All, or a substantial part, of these acts and omissions by Defendants occurred in the District of Columbia.

26.    In sharp contrast to the substantial financial benefits enjoyed by Defendants from UIP's success in a booming real-estate market, Mrs. Coster has received no distributions, salary, bonuses, or other financial remuneration from UIP since Mr. Coster's death, despite her 50% ownership in the Company.  Continuously since at least April 2015, Defendants, acting intentionally and in bad faith, have structured the Company's finances to avoid realizing a

- 7 -

significant net profit.  They have done so to deny Mrs. Coster any profit distributions, dividend

payments, or other financial remuneration from her 50% ownership of the Company.  All, or at

least a substantial part, of this wrongful and inequitable conduct by Defendants occurred at UIP's

offices in the District of Columbia.

       27.     Also in bad faith and in violation of their fiduciary duties to Mrs. Coster,

Defendants have redirected UIP investment opportunities since at least April 2015—including,

without limitation, the real-estate projects identified in Paragraph 23 above—to other entities

owned in whole or in part by Defendants, but not by Mrs. Coster.  Defendants have thus used the

resources and personnel of UIP (and UIP PM and UIP GC) to identify, develop, and manage

large-scale projects in which Defendants have their own financial investments and from which

Mrs. Coster does not benefit. All, or at least a substantial part, of this wrongful and inequitable

conduct by Defendants occurred at UIP's offices in the District of Columbia.

       28.     As a result of Defendants' unlawful and bad-faith exclusion of Mrs. Coster from

any participation in the corporate affairs and governance of UIP (and UIP PM and UIP GC)—

including, without limitation, denying her Board representation and failing to hold the required

annual shareholder meetings—Defendants have caused UIP (and UIP PM and UIP GC) to take

significant business risks and incur substantial debts and liabilities without Mrs. Coster's

knowledge, approval, or input.

       29.     Ultimately, despite her 50% ownership of the Company, Mrs. Coster has received

no distributions, dividend payments, or other financial remuneration from the Company since

Wout Coster's death in April 2015.  All, or a substantial part, of Defendants' acts and omissions

in connection with their bad-faith scheme to deny Mrs. Coster any participation in the financial

success of UIP—and its putative subsidiaries UIP PM and UIP GC—occurred at UIP's offices in the District of Columbia.

### D. Defendants' Freeze-Out of Mrs. Coster and Failure to Provide Company Books and Records

30.     The Bylaws of UIP require an annual meeting of the Company's "stockholders for the election of directors and the transaction of other business . . . ."  In breach of their fiduciary duties, Defendants have failed to hold any annual meetings of UIP's stockholders (Defendant Schwat Realty LLC and Mrs. Coster) since Mr. Coster's death in April 2015.  By so doing, Defendants Schwat, Bonnell, and Cox have wrongfully retained their Board of Director seats continuously since April 2015, without any approval by a vote of the Company's stockholders. All, or a substantial part, of Defendants' acts and omissions occurred in the District of Columbia.

31.     Despite owning 50% of the Company, Mrs. Coster has not had any representation on the Board of Directors since her husband died in April 2015.

32.     As Board members, Defendants Bonnell and Cox vote consistently in accord with the wishes of Defendant Schwat, the Chairman of the Board.  Mrs. Coster is unaware of any instance in the last three years in which there has been dissent by any Board member from Defendant Schwat's favored position.

33.     Beginning in October 2017, Mrs. Coster has made multiple books and records demands on UIP in the District of Columbia.  In violation of their fiduciary duties to Mrs. Coster and in violation of Delaware statute, Defendants have only partially cooperated with the demands, and have failed to provide a significant portion of the requested documentation.  By so doing, Defendants seek to prevent Mrs. Coster from gaining visibility into the financial success of UIP and their self-interested management of the Company.  All, or a substantial part, of these acts and omissions by Defendants occurred in the District of Columbia.

34.     On April 27, 2018, Mrs. Coster's representatives made a noticed and scheduled visit to UIP's offices in the District of Columbia to review documents.  Defendant Schwat greeted these representatives with profanities ("f**k you," "go f**k yourself," "get the f**k out of my office"), and ordered them out of the building.  Defendant Schwat cursed at them and made an obscene gesture as they left.

### E.  Defendants' Sham Stock Issuance In Violation of Their Fiduciary Duties

35.     Under a resolution dated December 12, 2007, Wout Coster, Mr. Bruggen, Defendant Schwat, Defendant Bonnell and Defendant Cox were elected directors of the Company.

36.     As detailed above, Mr. Bruggen has since resigned and Wout Coster has died.

37.     The Company's board of directors thus is comprised entirely of holdover directors—Defendant Schwat, Defendant Bonnell, and Defendant Cox—elected in 2007.

38.     Mrs. Coster has made efforts to obtain representation of her interests on the Board.  Beginning in April 2018, Mrs. Coster called a series of shareholder meetings to propose and vote on new directors.

39.     Defendant Schwat has used his stake in the Company to vote down each of Mrs. Coster's nominated candidates, thus denying Mrs. Coster representation on the Board.

40.     Because of Defendant Schwat's votes, a shareholder deadlock has resulted.  The Company is now run by holdover Directors who were elected eleven years ago and have not been re-elected since.

41.     To resolve the shareholder deadlock, in June 2018, Mrs. Coster filed an action in Delaware Chancery Court for the appointment of a custodian to oversee UIP pursuant to title 8, section 226(a)(1) of the Delaware Code.  Section 226(a)(1) provides that the Chancery Court

may appoint a custodian when "[a]t any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors." That case is *Coster v. UIP Companies Inc. et al.*, Case No. 2018-0440 (the "Custodian Action").

42.     On July 26, 2018, Defendant Schwat filed his Answer to Mrs. Coster's complaint in the Custodian Action, objecting to the proposed appointment of a custodian.

43.     On August 15, 2018, without prior notice to, or consultation with, Mrs. Coster or her attorneys, Defendants Schwat, Bonnell, and Cox, as the Directors of UIP, adopted a Unanimous Written Consent of the Board of Directors of UIP (the "August 15 Unanimous Consent").

44.     By the August 15 Unanimous Consent, the Board of Directors resolved to sell 33 1/3 shares of stock to Defendant Bonnell—a UIP Board member and insider.

45.     As a pretext for this sale, the Board's August 15 Unanimous Consent cites a 2014 term sheet from negotiations between Mrs. Coster's late husband, Defendant Schwat, Defendant Bonnell, and a fourth party (Heath Wilkinson) over a potential sale of Mr. Coster's interest in the company.

46.     Negotiations in 2014, however, had broken down before an actual agreement was reached. As a result, this term sheet, which would have provided for a $2.125 million payout to Mr. Coster for his 50% holdings, was never carried through.

47.     Per the terms of the August 15 Unanimous Consent, for his one-third share of the Company, Defendant Bonnell is to pay $41,289.67, which is only a small fraction of its fair market value.

48.     Later in the day on August 15, 2018—the same day he had signed the resolution issuing stock to Defendant Bonnell—Defendant Schwat filed an Amended Answer in the Custodian Action.

49.     Defendant Schwat's Amended Answer stated that "UIP has issued the remaining 33 1/3 shares of its stock and sold it at fair market value to [Defendant] Bonnell's entity, Bonnell Realty, LLC . . ."

50.     The Amended Answer went on to state, "Given the issuance of additional stock, as described herein . . . Defendants expect to move for judgment on the pleadings."

51.     The Amended Answer further stated a new affirmative defense: "The Complaint is moot."

52.     The transparent and bad-faith purpose of the issuance of stock to Defendant Bonnell was to attempt to moot the Custodian Action and prevent the Delaware Chancery Court from appointing a custodian by diluting Mrs. Coster's 50% interest in the Company.

53.     In doing so, the Directors clearly hope to maintain their Board seats, their officer positions, and their control over the Company to the exclusion and detriment of Mrs. Coster and her rights as a Company shareholder.

54.     The $41,289.67 price for the one-third stake in the Company is grossly inadequate and is clearly intended to serve as a fig leaf for the improper issuance of the stock.

## DIRECT ALLEGATIONS

55.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.  Consequently, at all relevant times, each of the Director Defendants had a duty to Mrs. Coster (a) to administer the affairs of the Company

skillfully, fairly, diligently, carefully and honestly; (b) to act solely in the interests of the Company and its stockholders and not in their personal interests; (c) to safeguard and protect the Company's assets and property; (d) not to waste or acquire for themselves any assets or property of the Company; (e) not to favor their own interests illegally or improperly in the management of the affairs, property and assets of the Company; (f) not to act deliberately in a manner which injures Mrs. Coster as a stockholder of the Company; (g) not to acquire illegally for themselves any asset or property of the Company; (h) to keep honest, accurate and correct accounts of all of the Company's affairs, business and transactions; and (i) to perform diligently and faithfully all of the duties devolving upon them as officers and directors of the Company.

56.     Mrs. Coster relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those duties.

57.     Each Director Defendant has breached his fiduciary duties—including the duty of loyalty—to Mrs. Coster consistently, repeatedly, and in numerous respects since at least April 2015 by acting in bad faith to advance their own self-interests (and the interests of stockholder Schwat Realty LLC) to the detriment of Mrs. Coster, as detailed above, including without limitation:

> (a)     Intentionally and in bad faith, structuring the Company's finances (and those of UIP PM and UIP GC) to avoid realizing a significant net profit to deny Mrs. Coster any profit distributions, dividend payments, or other financial remuneration from her 50% ownership of UIP;

> (b)     Redirecting, in bad faith, UIP investment opportunities—including, without limitation, the real-estate projects identified in Paragraph 23 above—to other entities

owned in whole or in part by Defendants, but not by Mrs. Coster, thereby enriching themselves and Schwat Realty LLC to the detriment of Mrs. Coster;

(c)     Using, in bad faith, the employees, resources, and offices of UIP (and UIP PM and UIP GC) to identify, purchase, develop, and manage real-estate investment projects in which Defendants have their own financial investments and from which Mrs. Coster does not benefit;

(d)     Failing to hold any annual meetings of its stockholders (Defendant Schwat Realty LLC and Mrs. Coster) since Mrs. Coster's husband died in April 2015, as required by UIP's bylaws, thereby wrongfully and in bad faith denying Mrs. Coster any representation on the Board of Directors, despite her 50% ownership interest;

(e)     Consistently voting, in bad faith and with an intent to harm Mrs. Coster and favor Schwat Realty LLC, in accord with the wishes of Defendant Schwat, thus favoring one Company stockholder at the expense of the other;

(f)     Intentionally and in bad faith, refusing to fully comply with lawful and proper demands by Mrs. Coster for access to the Company's books and records, thereby obscuring from Mrs. Coster the full extent of Defendants' self-interested management of the Company to the detriment of Mrs. Coster;

(g)     Intentionally and in bad faith, causing UIP (and UIP PM and UIP GC) to take significant business risks and incur substantial debts and liabilities without Mrs. Coster's knowledge, approval, or input; and

(h)     Intentionally and in bad faith, effecting a sham sale of stock to Defendant Bonnell—an insider—for the purpose of diluting Mrs. Coster's 50% share of the Company

- 14 -

in an attempt to moot the Custodian Action and entrench themselves as Directors of the Company, to the exclusion and detriment of Mrs. Coster.

58.     At all relevant times, Defendant Schwat Realty LLC ("Schwat Realty")—acting through Defendant Schwat, its sole member—has been the controlling stockholder of UIP because the Board of Directors was under its actual control and influence.  Defendant Schwat is the Chairman of the Board.  At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to Mrs. Coster as the non-controlling shareholder of UIP.

59.     The other two Board members—Defendants Bonnell and Cox—are under the control and influence of Defendant Schwat.  For years, the Board has done the bidding of Schwat Realty and has promoted Schwat Realty's interests over those of Mrs. Coster's.  Schwat is President of UIP, and Bonnell and Cox both hold their officer positions at his discretion.  Upon information and belief, Defendants Bonnell and Cox have never cast Board votes contrary to the wishes of Defendant Schwat; instead, they rubber stamp any and every proposal made to the Board by Defendant Schwat.

60.     Schwat Realty has breached its fiduciary duties to Mrs. Coster by promoting its own interests as a UIP stockholder ahead of Mrs. Coster's interests and has repeatedly acted towards Mrs. Coster with a lack of probity and fair dealing, and has visibly departed from the standards of fair dealing upon which every stockholder is entitled to rely.  Since Mr. Coster's death in April 2015, Schwat Realty has engaged in an unlawful and wrongful "freeze-out" of Mrs. Coster from the corporate governance of UIP and from any participation in the financial success of the Company (and its putative subsidiaries, UIP PM and UIP GC).  Additionally, Schwat Realty has caused UIP (and UIP PM and UIP GC), in substantial part, to use its

employees, offices, and other corporate resources to further Schwat Realty's own financial investments—and/or those of its sole member, Defendant Schwat—that confer no benefit to Mrs. Coster, including the projects identified in Paragraph 23 above.

61.    Upon information and belief, as a result of Defendants' wrongful conduct, Mrs. Coster has suffered damages in excess of $5 million.

## DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY UNDER RULE 23.1

62.    In the alternative to direct claims, some of the claims and damages in this matter may be deemed to arise from rights of UIP rather than from Mrs. Coster's direct rights as a stockholder. Mrs. Coster therefore brings this action in part derivatively to redress injuries suffered by UIP as a direct result of the breaches of fiduciary duties by the individual defendants.

63.    Mrs. Coster has beneficially owned UIP stock continuously during the wrongful course of conduct by Defendants alleged herein and through the present.

64.    Mrs. Coster, as the only UIP stockholder that has not participated in the wrongful course of conduct by Defendants, will fairly and adequately represent the interests of UIP stockholders who are similarly situated in enforcing the rights of UIP.

65.    This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

66.    Mrs. Coster has not made a demand on the UIP Board to bring suit asserting the claims set forth herein because pre-suit demand would be futile and is excused as a matter of law. All three members of UIP's Board – Schwat, Bonnell, and Cox – engaged in the wrongdoing at issue in this case, are named as Defendants in this action, and are interested parties for each of the claims in this matter.

67.     Defendants Schwat, Bonnell, and Cox engaged in a course of conduct designed to benefit themselves at the expense of Mrs. Coster and UIP, including redirecting UIP investment opportunities and misusing UIP resources.

68.     Defendants Schwat, Bonnell, and Cox were also directly interested in the issue of stock pursuant to the August 15 Unanimous Consent.

69.     Through Defendant Bonnell's acquisition of UIP stock in the sham stock sale described above, Defendants Schwat and Bonnell purport to own two-thirds of the Company's shares, and therefore to control the Company.

70.     Defendant Schwat has expressly supported continuation of the existing Board in office. He has alleged in pleadings filed in the Custodian Action that the stock sale to Defendant Bonnell "moots" the Custodian Action.

71.     If upheld, the issuance would, therefore, presumably ensure Defendants Schwat, Bonnell and Cox retain their current Board positions.

72.     By issuing the stock as related above, Defendants Schwat, Bonnell, and Cox have engaged in self-dealing, have misused their positions and authority within the Company, have committed breach of trust and have breached the fiduciary duties they owe to the shareholders – in this case, Mrs. Coster.

73.     Defendants Schwat, Bonnell, and Cox intentionally disregarded their oversight responsibilities, and acted with bad faith.

74.     Given the Directors' bad faith, a demand in this case under Federal Rule of Civil Procedure 23.1 would be futile.

## COUNT I
### Breach of Fiduciary Duty
### (Against Defendants Schwat, Bonnell, and Cox)

75.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 74 above as if fully set forth herein.

76.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.

77.     Mrs. Coster relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those duties.

78.     Each Director Defendant has breached his fiduciary duties—including the duty of loyalty—to Mrs. Coster consistently, repeatedly, and in numerous respects since at least April 2015 by acting in bad faith to advance their own self-interests (and the interests of stockholder Schwat Realty LLC) to the detriment of Mrs. Coster, as detailed above, including without limitation as described in Paragraph 57.

79.     Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from each Director Defendant's breaches of his fiduciary duties to her.

80.     In addition to compensatory damages, Mrs. Coster should be awarded punitive damages on Count I in an amount to be proved at trial because the Director Defendants' oppressive and wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or reckless, and each Director Defendant acted with actual malice towards Mrs. Coster and in willful disregard of her rights as a stockholder of UIP.

## COUNT II
### Derivative Claim for Breach of Fiduciary Duty
### (Against Defendants Schwat, Bonnell, and Cox)

81.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 80 above as if fully set forth herein.

82.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to UIP and its shareholders.

83.     UIP relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those duties.

84.     Each Director Defendant has breached his fiduciary duties—including the duty of loyalty—to UIP and its shareholders consistently, repeatedly, and in numerous respects since at least April 2015 by acting in bad faith to advance their own self-interests (and the interests of stockholder Schwat Realty LLC) to the detriment of UIP and its non-controlling shareholder, as detailed above, including without limitation as described in Paragraph 57.

85.     UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from each Director Defendant's breaches of his fiduciary duties.

86.     In addition to compensatory damages, UIP should be awarded punitive damages on Count II in an amount to be proved at trial because the Director Defendants' oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been outrageous, grossly fraudulent, or reckless, and each Director Defendant acted with actual malice towards UIP's non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

## COUNT III
## Breach of Fiduciary Duty
## <u>(Against Schwat Realty LLC)</u>

87.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 86 as if fully set forth herein.

88.     At all relevant times, Defendant Schwat Realty—acting through Defendant Schwat, its sole member—has been the controlling stockholder of UIP because the Board of Directors was under its actual control and influence.  Defendant Schwat is the Chairman of the Board.  At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to Mrs. Coster as the non-controlling shareholder of UIP.

89.     Schwat Realty has breached its fiduciary duties to Mrs. Coster by promoting its own interests as a UIP stockholder ahead of Mrs. Coster's interests and has repeatedly acted towards Mrs. Coster with a lack of probity and fair dealing, and has visibly departed from the standards of fair dealing upon which every stockholder is entitled to rely.

90.     Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from Schwat Realty's breaches of its fiduciary duties to her.

91.     In addition to compensatory damages, Mrs. Coster should be awarded punitive damages against Schwat Realty in an amount to be proved at trial because Schwat Realty's oppressive and wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of her rights as a stockholder of UIP.

**COUNT IV**
**Derivative Claim for Breach of Fiduciary Duty**
**(Against Schwat Realty LLC)**

92.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 91 as if fully set forth herein.

93.     At all relevant times, Defendant Schwat Realty—acting through Defendant Schwat, its sole member—has been the controlling stockholder of UIP because the Board of Directors was under its actual control and influence.  Defendant Schwat is the Chairman of the Board.  At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to UIP and its non-controlling shareholder.

94.     Schwat Realty has breached its fiduciary duties to UIP and its non-controlling shareholder by promoting its own interests as a UIP stockholder ahead of UIP and its non-controlling shareholder's interests and has repeatedly acted towards UIP and its non-controlling shareholder with a lack of probity and fair dealing, and has visibly departed from the standards of fair dealing upon which every stockholder is entitled to rely.

95.     UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from Schwat Realty's breaches of its fiduciary duties.

96.     In addition to compensatory damages, UIP should be awarded punitive damages against Schwat Realty in an amount to be proved at trial because Schwat Realty's oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards UIP's non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

- 21 -

**COUNT V**
**Aiding and Abetting Breaches of Fiduciary Duty**
**(Against Schwat Realty LLC)**

97.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 96 above as if fully set forth herein.

98.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.

99.     Since at least April 2015, the Director Defendants have breached their fiduciary duties to Mrs. Coster in multiple respects, as described above.  Schwat Realty knowingly participated in—indeed, actively encouraged, if not directed—each of those breaches by the Directors Defendants of their fiduciary duties to Mrs. Coster.   Schwat Realty did so because each of those wrongful acts and omissions directly benefitted Defendant Schwat, the sole member of Schwat Realty, to the detriment of Mrs. Coster.

100.     By actively participating in the Director Defendants' longstanding scheme to deny Mrs. Coster, an elderly widow, any financial remuneration from her 50% ownership in UIP, any role in the corporate affairs and governance of UIP, and any real visibility into the considerable financial success of the Company, Schwat Realty has aided and abetted the Director Defendants' breaches of their fiduciary duties to Mrs. Coster.

101.     Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from Schwat Realty's aiding and abetting of the Director Defendants' breaches of their fiduciary duties.

102.     In addition to compensatory damages, Mrs. Coster should be awarded punitive damages against Schwat Realty in an amount to be proved at trial because its oppressive and

wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of her rights as a stockholder of UIP.

**COUNT VI**
**Derivative Claim for Aiding and Abetting Breaches of Fiduciary Duty**
**(Against Schwat Realty LLC)**

103.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 102 above as if fully set forth herein.

104.    At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to UIP and its non-controlling shareholder.

105.    Since at least April 2015, the Director Defendants have breached their fiduciary duties to UIP and its shareholders in multiple respects, as described above.  Schwat Realty knowingly participated in—indeed, actively encouraged, if not directed—each of those breaches by the Directors Defendants of their fiduciary duties to UIP.   Schwat Realty did so because each of those wrongful acts and omissions directly benefitted Defendant Schwat, the sole member of Schwat Realty, to the detriment of UIP and its non-controlling shareholder.

106.    By actively participating in the Director Defendants' longstanding scheme to deny UIP's non-controlling shareholder any financial remuneration from her 50% ownership in UIP, any role in the corporate affairs and governance of UIP, and any real visibility into the considerable financial success of the Company, Schwat Realty has aided and abetted the Director Defendants' breaches of their fiduciary duties to UIP and its non-controlling shareholder.

107.    UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from Schwat Realty's aiding and abetting of the Director Defendants' breaches of their fiduciary duties.

108.    In addition to compensatory damages, UIP should be awarded punitive damages against Schwat Realty in an amount to be proved at trial because its oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards UIP's non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

**COUNT VII**
**Aiding and Abetting Breaches of Fiduciary Duty**
**(Against Defendants Schwat, Bonnell, and Cox)**

109.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 108 above as if fully set forth herein.

110.    At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to Mrs. Coster as a shareholder of UIP.

111.    Since at least April 2015, Schwat Realty has breached its fiduciary duties to Mrs. Coster, as described above.  The Director Defendants knowingly participated in—indeed, actively encouraged—each of those breaches by Schwat Realty of its fiduciary duties to Mrs. Coster.   The Director Defendants did so because the freeze-out of Mrs. Coster from the corporate governance of UIP and from any participation in the financial success of the Company directly benefitted them.  Additionally, each of the Director Defendants benefitted personally (or through wholly-owned intermediary entities) from Schwat Realty having caused UIP (and UIP PM and UIP GC), in substantial part, to use its employees, offices, and other corporate resources

- 24 -

to further Schwat Realty's own financial investments—and/or those of its sole member, Defendant Schwat—that confer no benefit to Mrs. Coster, including the projects identified in Paragraph 23 above.

112.   By actively participating in Schwat Realty's longstanding scheme to deny Mrs. Coster, an elderly widow, any financial remuneration from her 50% ownership in UIP and any role in the corporate governance of UIP, and by participating in the diversion of corporate resources and opportunities for the benefit of Schwat Realty and to the detriment of Mrs. Coster, each of the Director Defendants has aided and abetted Schwat Realty's breaches of its fiduciary duties to Mrs. Coster.

113.   Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from the Director Defendants' aiding and abetting of Schwat Realty's breaches of their fiduciary duties.

114.   In addition to compensatory damages, Mrs. Coster should be awarded punitive damages against each of the Director Defendants in an amount to be proved at trial because their oppressive and wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of her rights as a stockholder of UIP.

**COUNT VIII**
**Derivative Claim for Aiding and Abetting Breaches of Fiduciary Duty**
**(Against Defendants Schwat, Bonnell, and Cox)**

115.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 114 above as if fully set forth herein.

116.   At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to UIP and its non-

controlling shareholder.

117.    Since at least April 2015, Schwat Realty has breached its fiduciary duties to UIP and its non-controlling shareholder, as described above.  The Director Defendants knowingly participated in—indeed, actively encouraged—each of those breaches by Schwat Realty of its fiduciary duties to UIP and its non-controlling shareholder.   The Director Defendants did so because the freeze-out of Mrs. Coster from the corporate governance of UIP and from any participation in the financial success of the Company directly benefitted them.  Additionally, each of the Director Defendants benefitted personally (or through wholly-owned intermediary entities) from Schwat Realty having caused UIP (and UIP PM and UIP GC), in substantial part, to use its employees, offices, and other corporate resources to further Schwat Realty's own financial investments—and/or those of its sole member, Defendant Schwat—that confer no benefit to Mrs. Coster, including the projects identified in Paragraph 23 above.

118.    By actively participating in Schwat Realty's longstanding scheme to deny UIP's non-controlling shareholder any financial remuneration from her 50% ownership in UIP and any role in the corporate governance of UIP, and by participating in the diversion of corporate resources and opportunities for the benefit of Schwat Realty and to the detriment of UIP and its non-controlling shareholder, each of the Director Defendants has aided and abetted Schwat Realty's breaches of its fiduciary duties to UIP and its non-controlling shareholder.

119.    UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from the Director Defendants' aiding and abetting of Schwat Realty's breaches of their fiduciary duties.

120.    In addition to compensatory damages, UIP should be awarded punitive damages against each of the Director Defendants in an amount to be proved at trial because their

- 26 -

oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been

outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards UIP's

non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

**COUNT IX**
**Civil Conspiracy**
**(Against All Defendants)**

121.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 120

above as if fully set forth herein.

122.    At all relevant times, each Director Defendant had fiduciary duties to Mrs. Coster

in her capacity as a stockholder of the Company.

123.    Each Defendant, acting in combination and in concert with the other Defendants,

knowingly undertook unlawful acts and omissions with the intent to, and effect of, breaching

fiduciary duties owed to Mrs. Coster and violating her legal rights as a stockholder in UIP,

including, without limitation, as described in Paragraph 57 above.

124.    In so doing, Defendants conspired to violate Mrs. Coster's legal rights as a UIP

stockholder, to breach fiduciary duties owed to her, and to place their own self-interests above

Mrs. Coster's interests, causing Mrs. Coster to suffer pecuniary harm in an amount to be proved

at trial.  Accordingly, each Defendant is jointly and severally liable for the acts of the other

Defendants committed in furtherance of the conspiracy.

125.    In addition to compensatory damages, Mrs. Coster should be awarded punitive

damages against all Defendants on this Count in an amount to be proved at trial because their

oppressive and wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent,

or reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of

her rights as a stockholder of UIP.

- 27 -

## COUNT X
### Derivative Claim for Civil Conspiracy
### (Against All Defendants)

126.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 125 above as if fully set forth herein.

127.    At all relevant times, each Director Defendant had fiduciary duties to UIP and its shareholders.

128.    Each Defendant, acting in combination and in concert with the other Defendants, knowingly undertook unlawful acts and omissions with the intent to, and effect of, breaching fiduciary duties owed to UIP and its non-controlling shareholder and violating their legal rights, including, without limitation, as described in Paragraph 57 above.

129.    In so doing, Defendants conspired to violate the legal rights of UIP and its non-controlling shareholder, to breach fiduciary duties owed to them, and to place their own self-interests above UIP and its non-controlling shareholder, causing UIP and its non-controlling shareholder to suffer pecuniary harm in an amount to be proved at trial.  Accordingly, each Defendant is jointly and severally liable for the acts of the other Defendants committed in furtherance of the conspiracy.

130.    In addition to compensatory damages, UIP should be awarded punitive damages against all Defendants on this Count in an amount to be proved at trial because their oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards UIP's non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

**COUNT XI**
**Derivative Claim for Declaratory Judgment**
**(Against All Defendants)**

131.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 130 above as if fully set forth herein.

132.    At all relevant times, each Defendant had fiduciary duties to UIP and Mrs. Coster in her capacity as a stockholder of the Company.  Each Defendant has breached his (or its) fiduciary duties to UIP and Mrs. Coster in bad faith and contrary to the best interests of the Company.  Each of the Defendants has acted intentionally in breaching fiduciary duties owed to UIP and Mrs. Coster, with the purpose of advancing their own pecuniary interests—and the pecuniary interests of Defendant Schwat and Schwat Realty—to the detriment of UIP and Mrs. Coster.  Defendants have done so in conscious disregard of their fiduciary duties toward UIP and Mrs. Coster and knowingly and intentionally violated Mrs. Coster's legal rights as a UIP stockholder, and are thus barred under Delaware law from being indemnified by UIP for their bad-faith conduct.

133.    Consequently, a declaratory judgment should be entered barring Defendants from seeking or accepting indemnification by UIP, directly or indirectly, for any judgment against any one or more of them in this action.

**COUNT XII**
**Derivative Claim for Injunctive Relief**
**(Against All Defendants)**

134.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 133 above as if fully set forth herein.

135.    At all relevant times, each Defendant had fiduciary duties to UIP and Mrs. Coster in her capacity as a stockholder of the Company.  Each Defendant has breached his (or its)

fiduciary duties to UIP and Mrs. Coster in bad faith and contrary to the best interests of the Company. Each of the Defendants has acted intentionally in breaching fiduciary duties owed to UIP and Mrs. Coster, with the purpose of advancing their own pecuniary interests—and the pecuniary interests of Defendant Schwat and Schwat Realty—to the detriment of UIP and Mrs. Coster. Defendants have done so in conscious disregard of their fiduciary duties toward UIP and Mrs. Coster and knowingly and intentionally violated Mrs. Coster's legal rights as a UIP stockholder, and are thus barred under Delaware law from being indemnified by UIP for their bad-faith conduct.

136. Consequently, an injunction should issue (a) prohibiting each Defendant from seeking or accepting indemnification, directly or indirectly, from UIP for any judgment in this action, and (b) requiring, in the event UIP advances or reimburses attorneys' fees and costs for any one or more Defendants in connection with this action, that each Defendant reimburse UIP for the total amount of such advanced or reimbursed attorneys' fees and costs within thirty days of entry of judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

A.    Enter judgment against Defendants, jointly and severally, in an amount to be established at trial.

B.    Order Defendants to pay (exclusively from Defendants' own funds, without reimbursement or pass through, directly or indirectly, from UIP or any of its subsidiaries), jointly and severally, Plaintiff's reasonable attorneys' fees and costs in connection with the preparation, filing, and prosecution of this action.

C.      Award Plaintiff pre-judgment interest at the maximum rate established by law.

D.      Declare that Defendants are barred under Delaware law from being indemnified by UIP, directly or indirectly, for any judgment against any one or more of them in this action as described in Paragraph 133 above.

E.      Enter the injunction described in Paragraph 136 above.

F.      Order such other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

 /s/ Michael K. Ross

Michael K. Ross (Bar No. 458573)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, N.W., Suite 740
Washington, D.C. 20004
Tel: (202) 737-3373
Fax: (202) 735-5071
mross@aegislawgroup.com

*Counsel for Marion Coster*

Dated: October 15, 2018

## RULE 23.1 VERIFICATION

I, Marion Coster, am the named Plaintiff to this action. I am a shareholder of UIP Companies, Inc. ("UIP"), and have been the beneficial owner of UIP stock at all times throughout the period during which the wrongful conduct alleged in the Complaint occurred. I have reviewed the allegations made in this VERIFIED AMENDED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF and state that the matters stated therein about which I have personal knowledge are true, and that the other matters stated therein are true and accurate to the best of my knowledge, information, and belief, based in part upon the investigation conducted by counsel.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 15th day of October, 2018.

Marion Coster