## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARION COSTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 18-cv-01995 (APM)** |
| ) | |
| **STEVEN SCHWAT, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Marion Coster is a shareholder of UIP Companies, Inc. ("UIP"). She brings direct and derivative claims against individual Defendants Steven Schwat, Peter Bonnell, and Stephen Cox (Directors of UIP) and Defendant Schwat Realty LLC (another UIP shareholder) for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy. *See generally* Am. Compl., ECF No. 5 [hereinafter Am. Compl.]. She alleges that "Defendants have engaged in a brazen and unlawful scheme to deny [her], an elderly widow, any financial remuneration from her 50% ownership in UIP, any role in the affairs and governance of UIP, and any real visibility into the considerable financial success of the Company." *See id.* ¶ 3.

Having failed to obtain a dismissal, *see* Order, ECF No. 11, Defendants now move for summary judgment on *res judicata* and collateral estoppel grounds. For the reasons stated below, the court denies Defendants' motion.

## II.    BACKGROUND[1]

As a result of her husband's passing in 2015, Plaintiff Marion Coster became a 50% owner of the outstanding shares of UIP.  Am. Compl. ¶¶ 15, 17.  Her ownership did not, however, afford her a seat or representation on UIP's board.  *Id.* ¶ 31.  Starting in April 2018, Plaintiff attempted to secure a board seat by calling a series of shareholder meetings to vote on new directors, but each time was unsuccessful due to a 50/50 shareholder deadlock with Defendant Schwat Realty LLC. *Id.* ¶¶ 38–39.  As a result, the UIP board remained unchanged and Plaintiff continued to be locked out of the company's governance.  *Id.* ¶ 40.

Plaintiff then went to court to correct this state of affairs.  On June 15, 2018, she filed an application in the Delaware Court of Chancery, seeking the appointment of a custodian for UIP under 8 Delaware Code § 226(a)(1)[2] (the "Custodian Action").  Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 29 [hereinafter Pl.'s Opp'n], at 8.  Two months later, on August 15, 2018, UIP's holdover board approved the sale of one-third of UIP's shares, which were then unissued, to Defendant Bonnell.  *Id.* at 9.  That sale diluted Plaintiff's ownership share of the company from 50% to 33.3%.  Within hours of the approval, Defendants filed an Amended Answer in the Custodian Action, claiming that because the stock sale eliminated the shareholder deadlock, the Custodian Action was moot.  *Id.*  On August 22, 2018, Plaintiff filed a separate complaint in the Court of Chancery to cancel the stock sale to Bonnell on the grounds that the transaction breached Defendants' fiduciary duties to Plaintiff (the "Stock Cancellation Action").  *Id.* at 10.  Upon

---

[1] Because this opinion is primarily for the benefit of the parties, the court provides only a brief summary of the prior litigation that forms the basis for Defendants' preclusion arguments.

[2] 8 Delaware Code § 226(a)(1) provides: "(a) The Court of Chancery, upon application of any stockholder, may appoint 1 or more persons to be custodians, and, if the corporation is insolvent, to be receivers, of and for any corporation when: (1) At any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors . . . ."

stipulation of the parties, the Court of Chancery consolidated the two actions into a single suit (the "Delaware Suit").  *Id.*

The Court of Chancery held a two-day hearing in April 2019 and issued its decision on January 28, 2020.  Defs.' Mot. for Summ. J., ECF No. 27 [hereinafter Defs.' Mot.], Ex. B, Mem. Op., ECF No. 27-4 [hereinafter Del. Mem. Op.].  The Court found that the stock sale to Bonnell satisfied the applicable "entire fairness" standard, and therefore the UIP board had not breached its fiduciary duties in approving the sale.  *Id.* at 64–65.  Because the sale eliminated the shareholder deadlock, the Court declined to appoint a custodian.  *Id.* at 65.

Plaintiff filed this suit in the District of Columbia, and on March 13, 2020, Defendants moved for summary judgment, arguing that the Delaware Suit should have preclusive effect in the instant litigation.

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party; a fact is "material" only if it can affect the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor.  *Id.* at 255.  To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor.  *Elzeneiny v. District of*

3

*Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## IV.   DISCUSSION

Defendants argue that *res judicata* and collateral estoppel preclude every theory of liability asserted in Plaintiff's Amended Complaint.  Defs.' Mot., Defs.' Mem. in Supp. of Mot. for Summ. J., ECF No. 27-2 [hereinafter Defs.' Mem.].  The court addresses the applicability of both doctrines below.

### A.   *Res Judicata*

*Res judicata*—or, in this case, claim preclusion—"exists to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).[3]  "The procedural bar of *res judicata* extends to all [claims] which might have been raised and decided in the first suit as well as to [those] that actually were decided.  In essence, the doctrine . . . serves to prevent a multiplicity of needless litigation . . . by limiting parties to one fair trial of . . . [a] cause of action which has been raised or should have been raised in a court of competent jurisdiction." *Id.* at 191–92 (cleaned up).

Under Delaware law, *res judicata* bars a claim where the following five-part test is satisfied:

> (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided [were] the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the [plaintiffs] in the case at bar; and (5) the decree in the prior action was a final decree.

---

[3] Both parties agree that Delaware law applies to the question of whether the Delaware Court of Chancery judgment should be given preclusive effect.  Defs.' Mem at 9; Pl.'s Opp'n at 14 n.8; *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

*Dover Hist. Soc'y, Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1092 (Del. 2006).  In this case, the parties agree that only the third element is in dispute:  whether "the original cause of action or the issues decided [were] the same as the case at bar."  *Id.*

Claims across separate suits share the same cause of action "if the claims in the later litigation ar[ise] from the same transaction that formed the basis of the prior adjudication."  *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 645 (Del. 2014).  This "same transaction" inquiry requires "pragmatic consideration."  *LaPoint*, 970 A.2d at 193.  Relevant factors include "whether the facts are related in time, space, origin, or motivation" and "whether they form a convenient trial unit."  *Id.* (quoting Restatement (Second) of Judgments § 24(2) (1982)).  Two claims "derive[d] from a common nucleus of operative fact[s]" arise from the same transaction.  *Id.* (quoting *Maldonado v. Flynn,* 417 A.2d 378, 383 (Del. Ch. 1980)).  Additionally, "the defendant must show that the plaintiff neglected or failed to assert claims which in fairness should have been asserted in the first action."  *Id*. at 193–94 (cleaned up).

Defendants assert that the factual allegations supporting Plaintiff's theories of liability have already been "pleaded, litigated, and briefed" in the Delaware Suit.  Defs.' Mem. at 3.  Defendants group the factual assertions made in Plaintiff's Complaint into three categories: (1) the allegation that Defendants engaged in a "sham" stock sale to Defendant Bonnell, Am. Compl. ¶ 57(h); (2) the allegations related to the diversion of business opportunities and profits from UIP toward other Special Purpose Entities ("SPEs") owned by Defendants, *id.* ¶¶ 57(a)–(c); and (3) the allegations related to Defendants' "scheme" to deny Plaintiff the opportunity to participate in the management of the company, *id.* ¶¶ 57(d)–(g).  *See* Defs.' Mot., Ex. A, ECF Doc. No. 27-3 [hereinafter Defs.' Ex. A], at 2.  The allegations in each category, Defendants contend, were previously raised in the Custodian Action, the Stock Cancellation Action, or both.  *See generally* Defs.' Ex. A.  So, in

Defendants' view, because the claims in this case and those in the Delaware Suit arise from the same set of operative facts, *res judicata* should preclude Plaintiff from moving forward here. *See* Defs.' Mem. at 13–19.

The court disagrees for two reasons. First, certain claims across the suits do not reasonably appear to arise from the same transaction. Take, for example, Plaintiff's claims that Defendants breached their fiduciary duty by causing UIP resources, management, and personnel to direct investment opportunities to entities that Defendants owned personally, and by using UIP's business structure to avoid realizing a significant net profit for the company. *See* Am. Compl. ¶¶ 57(a)–(c). Defendants argue that the Court of Chancery already considered these underlying allegations in the context of Plaintiff's Delaware claim that Defendants breached their fiduciary duty in approving the stock sale to Bonnell. Defs.' Mem. at 17. Indeed, Plaintiff challenged the valuation that served as the basis of the purchase price for the stock sale. Del. Mem. Op. at 50–64. In particular, she argued that the valuation failed to normalize for "sub-market pricing and other mechanisms employed by Defendants to store UIP's profits at the SPE level—including intercompany loans, consulting fees, and below-market pricing—all of which would have the effect of distorting [UIP's] value." *See* Defs.' Mot., Ex. C., Pl.'s Pre-Trial Br., ECF No. 27-5, at 24.

But that alone is insufficient to conclude that Plaintiff's current breach claims and her Delaware stock sale claim share the same cause of action. Ultimately, the transaction at the heart of each claim is different. The Delaware stock sale claim centers on the sale itself, as well as Defendants' reliance on a valuation that allegedly failed to account for UIP's pricing model and business structure. *See* Del. Mem. Op. at 50–64. In contrast, Plaintiff's current fiduciary breach claim rests on the impropriety of those pricing and business structure decisions themselves. *See*

6

Am. Compl. ¶¶ 57(a)–(c).  Partial factual overlap aside, it would be a stretch to hold that a claim that centers on the fair price of the stock sale would preclude Plaintiff from asserting that Defendants breached their fiduciary duty by improperly structuring UIP's business activities and balance sheet.

Second, and perhaps more importantly, Defendants cannot demonstrate that Plaintiff "neglected or failed to assert claims which in fairness *should* have been asserted in the [Delaware Suit]."  *LaPoint*, 970 A.2d at 193–94 (emphasis added).  At the outset, Plaintiff brought the Custodian Action under 8 Delaware Code § 226 with the reasonable expectation that she would benefit from summary proceedings and adjudication.  *See* Pl.'s Opp'n at 20–21; *see also Balch Hill Partners, L.P. v. Shocking Techs., Inc.*, C.A. No. 8249-VCN, 2013 WL 588964, at *4 n.14 (Del. Ch. Feb. 7, 2013) ("[A]ppointment of a custodian or receiver under 8 Del. C. § 226 is a summary proceeding" in which a hearing can take place "within forty-five to sixty days.").  The only remedy Plaintiff sought in that action was the appointment of a custodian for UIP.  Pl.'s Opp'n at 8–9.  If Plaintiff had been required under *res judicata* to bring her current fiduciary breach claims as well—claims for which she seeks monetary damages and that require a more rigorous analysis of financial transactions—she would have been forced to choose between two unreasonable outcomes.  Either she could bring her fiduciary breach claims and thus turn a summary adjudication into an extensive plenary matter, or she could permanently abandon her fiduciary breach claims altogether.  Because neither outcome would have been fair to Plaintiff, the court concludes that her fiduciary breach claims need not have been asserted in Delaware.

Defendants respond that Plaintiff gave up her right to a summary adjudication when she decided to bring the plenary Stock Cancellation Action.  *See* Defs.' Reply in Supp. of Mot. for Summ. J., ECF No. 30 [hereinafter Defs.' Reply], at 14 ("Once Plaintiff co-mingled these issues,

7

summary adjudication was no longer possible . . .").  But that argument ignores the fact that the Stock Cancellation Action was made necessary only because Defendants decided to sell the remaining unissued shares of UIP to Bonnell to moot the Custodian Action.  *See* Del. Mem. Op. at 30 ("Defendants' own Amended Answer make[s] clear that the Stock Sale was significantly motivated by a desire to moot the Custodian Action.  Defendants effectively admitted this much in post-trial briefing.").  If Defendants had not triggered the stock sale, Plaintiff and Defendants would have remained deadlocked as 50% shareholders in UIP, thus facially satisfying the necessary condition for appointment of a custodian under Section 226(a)(1).  *See Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) (describing the requirement of the statute).  Defendants forced Plaintiff's hand and compelled her to bring a plenary action that they now claim was "inextricably intertwined" with her earlier summary action.  *See* Defs.' Reply at 14.  Had Plaintiff not filed the Stock Cancellation Action, she would have effectively conceded defeat in the Custodian Action.  Defendants cannot now leverage the plenary nature of the Stock Cancellation Action, which they caused, to argue that Plaintiff should have included a host of other tangentially related claims in that case.  To hold otherwise would unfairly punish Plaintiff for reacting to events beyond her control to protect her own interests, a result divorced from *res judicata*'s purpose.

**B.      Collateral Estoppel**

In the alternative, Defendants assert that collateral estoppel—i.e., issue preclusion—prohibits Plaintiff from advancing her case in this court.  A close cousin of claim preclusion, collateral estoppel is animated by the notion that "later courts should honor the first actual decision of a matter that has been actually litigated."  18 Fed. Prac. & Proc. Juris. § 4416 (3d ed.).  Under Delaware law, collateral estoppel requires the following four elements: "1) the issue sought to be

precluded must be the same as that involved in the prior litigation; 2) that issue must have been actually litigated; 3) the issue must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment." *Cal. State Tchrs.' Ret. Sys. v. Alvarez*, 179 A.3d 824, 843 (Del. 2018).  In short, Defendants suggest that even if *res judicata* does not outright preclude Plaintiff from bringing her claims in this court, individual issues underpinning those claims have already been litigated and decided adversely to Plaintiff in Delaware.  *See* Defs.' Reply at 15–17.

At this juncture, the court sees no need to engage with Defendants' collateral estoppel arguments because, even if the identified *issues* were precluded, none of Plaintiff's *claims* would fall.  Defendants contend, for example, that the Court of Chancery considered and rejected Plaintiff's theory that "sub-market pricing"—defined broadly as "pricing of UIP's services at below-market rates, as well as intercompany loans and leases, consulting agreements, compensation and perquisites, and other related-party transactions"—artificially inflated the profit recorded at the SPE level and artificially decreased the profit reported by UIP.  *See* Defs.' Reply at 15–17.  Supposing that were true, the application of collateral estoppel as to those issues would not dispense with any of Plaintiff's claims.  Defendants still would have to grapple with allegations concerning the failure to hold annual stockholder meetings, consistent votes favoring Schwat Realty LLC over Plaintiff, and the refusal to comply with Plaintiff's demands for access to UIP's books and records.  Am. Compl. ¶¶ 57(d)–(g).  In theory, each of those allegations could independently support a finding of fiduciary breach, so Plaintiff's claims ultimately survive summary judgment even if the Delaware court could be deemed to have resolved discrete issues,

9

such as the bona fides of the stock sale to Bonnell.  Thus, the court sees no pressing need to address

issue preclusion at this time.[4]

## V.      CONCLUSION AND ORDER

For the reasons stated above, Defendants' Motion for Summary Judgment, ECF No. 27, is

denied.

Dated:  November 14, 2020

Amit P. Mehta
United States District Court Judge

---

[4] None of this is to say that Defendants are barred from renewing their collateral estoppel arguments at a later stage in this litigation.