## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARION COSTER, for herself and | * | |
| derivatively on behalf of UIP | * | |
| COMPANIES INC. | * | |
| 1025 Eldorado Avenue | * | |
| Clearwater, FL 33767 | * | |
| | * | |
| and | * | Civil Action No. 18-CV-1995 |
| | * | |
| COSTER REALTY LLC | * | |
| 1025 Eldorado Avenue | * | |
| Clearwater, FL 33767 | * | **ANSWER TO SECOND AMENDED** |
| | * | **COMPLAINT AND JURY DEMAND** |
| *Plaintiffs*, | * | |
| | * | |
| v. | * | |
| | * | |
| STEVEN F. SCHWAT | * | |
| 4518 Drummond Avenue | * | |
| Chevy Chase, MD 20815 | * | |
| | * | |
| PETER J. BONNELL | * | |
| 2400 16th Street, NW | * | |
| Apt. 707 | * | |
| Washington, DC 20009 | * | |
| | * | |
| STEPHEN E. COX | * | |
| 9608 Hillridge Drive | * | |
| Kensington, MD 20898-3120 | * | |
| | * | |
| SCHWAT REALTY LLC | * | |
| 4518 Drummond Avenue | * | |
| Chevy Chase, MD 20815 | * | |
| | * | |
| BONNELL REALTY LLC | * | |
| 4518 Drummond Avenue | * | |
| Chevy Chase, MD 20815 | * | |
| | * | |
| COX REALTY LLC | * | |
| 9608 Hillridge Drive | * | |
| Kensington, MD 20898-3102 | * | |
| | * | |
| *Defendants*, | * | |
| | * | |
| and | * | |

|                              | * |
| ---------------------------- | - |
| UIP COMPANIES, INC.          | * |
| 140 Q Street, NE, Suite 140B | * |
| Washington, DC 20002         | * |
|                              | * |
| *Nominal Defendant.*         | * |
|                              | * |

## ANSWER TO VERIFIED SECOND AMENDED COMPLAINT
## FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Defendants Steven Schwat, Peter Bonnell, Stephen Cox, Schwat Realty LLC, Bonnell Realty LLC, Cox Realty LLC and nominal Defendant UIP Companies, Inc. ("UIP"), by and through undersigned counsel herby Answer the Second Amended Verified Complaint filed by Plaintiffs Marion Coster, for herself and derivatively on behalf of UIP Companies, Inc. ("UIP" or "the Company"), and Coster Realty LLC ("Coster Realty").

### NATURE OF THE ACTION

1.  Admitted that UIP, together with its subsidiaries, are engaged in real estate development, and specialize in multi-family properties in the Washington, DC metropolitan area, but they do not themselves own, invest in or purchase real estate.  By contrast, since its inception, UIP's principals (including Plaintiff's late husband) have themselves invested in real estate, but have done so through special purpose entities not owned by UIP.  Admit that Mr. Coster was an initial shareholder when UIP was first formed, but deny that he "co-founded" the Company.  Deny that Mrs. Coster, who owns 33 1/3 shares of the 100 shares in the Company, is a "50% stockholder in UIP."

2.  Admit that the Director Defendants are all members of the Board of Directors of UIP. Admit that Schwat Realty LLC is a stockholder of UIP, but deny that it has "been in control of the Company."  The remaining allegations in Paragraph 2 are legal conclusions to which no response is required.

3.      Denied.

4.      Admit that on August 15, 2018, the Director Defendants voted to issue 33 1/3 shares of UIP stock to an entity owned by Mr. Bonnell, and that the sale is a subject of a lawsuit in the Delaware Chancery Court, which was tried on April 17 and 18, 2019, and which is currently on remand to that Court for a determination of whether the sale should be cancelled despite the Delaware Supreme Court's affirmation of the Chancery Court's determination that the Stock Sale was entirely fair to the corporation.  Admit that neither Mrs. Coster nor any candidate that she has nominated has been elected or appointed to a seat on the Board of Directors since her husband's death.  The remaining allegations in Paragraph 4 are denied.

5.      Denied.

6.      Denied.

7.      Deny that the sales of the Capital Park Tower properties—which was dictated by the project's equity partner Clark Construction—were "orchestrated" by Messrs. Schwat and Bonnell.  Admit that Mr. Schwat executed certain documents in his capacity as one of the representatives for the buyer and the seller in the transaction, though all transactions were approved by others, and executed by others as well.  Admit that Mr. Schwat and Mr. Bonnell are investors in the purchaser in the transaction.  Defendants deny the remaining allegations of Paragraph 7.

8.      Denied.

9.      Denied.

## THE PARTIES

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

## JURISDICTION AND VENUE

19.     Admitted that this Court has subject matter jurisdiction.

20.     Admitted that venue in this Court is proper.

## FACTUAL BACKGROUND

21.     Admit that Messrs. Schwat, Bruggen, and Coster were the initial shareholders of UIP and that each were issued 33 1/3 shares of UIP stock through the intermediate entities but deny that the three individuals "formed" or founded UIP.

22.      Admit that Mr. Bruggen resigned from UIP.  Deny that his stock was "bought back" by the Company as the stock was assigned back to the Company for no consideration. Admit that sixty-six and 2/3 shares of UIP stock remained outstanding from the time of Mr. Bruggen's resignation until the sale of the non-outstanding 33 1/3 shares to Bonnell Realty, LLC on August 15, 2018.

23.     Admitted.

24.     Admitted, on information and belief.

25.     Admit that Mr. Coster was involved in the management and operations of UIP until sometime prior to his death in April 2015.  Plaintiffs' averment that "[t]he Company was, and continues to be, very successful" is a statement of opinion which requires no response. Nevertheless, Defendants aver that UIP and its fee-generating subsidiaries do not themselves

- 4 -

own, invest in, or purchase real estate.  These investments are made through single purpose

entities ("SPEs"), in which neither UIP nor its subsidiaries have any ownership interest.

Defendants further aver that since 2012, UIP and its fee-generating subsidiaries have generated a

combined positive net income only in the years 2013, 2015, and 2020.

     26.    Admitted.

     27.    Admit that UIP PM and UIP GC are wholly-owned subsidiaries of the Company

as evidenced by the resolutions provided to Plaintiffs in response to their books and records

requests.  Deny the remaining allegations.

     28.    Admit that Paragraph 28 accurately states data applicable to UIP and its

subsidiaries' gross income for the periods stated.  To the extent that Paragraph 28 purports to

allege that this gross income represented profits, the allegation is denied.  Admit that UIP PM

receives revenue from fees it charges to manage residential buildings.  Plaintiffs'

characterizations of the revenue as "steady, substantial, and growing" are opinions that require

no response.  Nevertheless, Defendants further aver that while UIP PM's gross income has

ranged from approximately $2.7 million to approximately $3.7 million over the period from

2012 to 2017, UIP PM did not turn an operating profit in any of those years.

     29.    Admitted that the Director Defendants, as Directors and Officers, have overseen

and managed the affairs of the Company and its subsidiaries; the allegations are otherwise

denied.

     30.    Deny that UIP, UIP GC, UIP AM and UIP PM have "benefitted enormously"

from the post-2011 real estate market.  As previously averred, these entities do not own, invest

in, or purchase real estate.  Deny the remaining allegations.

31.     Admitted that the Company's 2016 tax return reports that Mr. Schwat received approximately $365,000 and that Mr. Bonnell received $200,000 in salary from the Company. Admit that Mr. Schwat and Mr. Bonnell are, as Mr. Coster had been and as is common in the industry, periodically paid bonuses out of the acquisition and development fees generated by deals they participated in closing.  Admit that each of the Director Defendants' principal place of work is at UIP's offices in the District of Columbia.

32.     Admit that Mrs. Coster, who never been an employee of the Company, has not received a salary from the Company, either before or after her husbands' death.  Further admit that Mrs. Coster, who has never helped to close a real estate investment deal for UIP AM, has never received a bonus from the Company, either before or after her husband's death.  Further admit that during the entire time Mrs. Coster has owned shares, the Company has never paid dividends to its any of its shareholders (including Mr. Schwat and Mr. Bonnell), Plaintiffs have also never received any shareholder dividends from the Company.  Deny that Defendants have intentionally structured the Company's finances to avoid realizing a profit.  The remaining allegations in Paragraph 26 state legal conclusions to which no response is required.  To the extent a response beyond the legal conclusions is required, the allegations are denied.

33.     Denied.

34.     Defendants admit that Mrs. Coster is not involved in the day-to-day operations or management of the business, and that she therefore is unaware of many aspects of the business, including debt or liabilities that may be incurred from time-to-time.  The allegations in Paragraph 34 are otherwise denied.

35.     Admitted that Mrs. Coster has received no financial remuneration — whether in the form of distributions, dividends, salary, or bonuses — from the Company or its fee-

generating subsidiaries (as opposed to those special purpose and "promote" entities in which Mrs. Coster still maintains an interest and through which she has received millions of dollars in distributions since her husband's death) either before or after Wout Coster's death in April 2015.

36.     Admit that the Company's Bylaws provide for an annual meeting of the Company's stockholders for the election of directors.  Deny that Defendants have failed to hold any such meetings since Mr. Coster's death in April 2015.  An annual meeting was held June 2, 2018, with Mrs. Coster's proxy in attendance.  The remaining allegations in Paragraph 36 are denied.

37.     Admit that neither Mrs. Coster nor any candidate that she has nominated has been elected or appointed to a seat on the Board of Directors since her husband's death.

38.     Admit that the Company typically acts after the Board reaches a consensus. Deny that this demonstrates that any Board member lacks independence or votes only according to Mr. Schwat's wishes.  Mrs. Coster's allegations regarding her subjective awareness of the Board's decision-making process require no response.

39.     Admit that Mrs. Coster has made books and records requests to which extensive records were produced, including even the general ledgers from all of UIP's constituent subsidiaries. The remaining allegations in Paragraph 39 are denied.

40.     Admit that Mrs. Coster's representative arrived at UIP's offices demanding to inspect the Company's records.  Deny that such a visit was ever "scheduled" as the Company was posting responsive records to a Dropbox account that was available to Plaintiffs and their representatives at all times.  Admit that Defendant Schwat reacted to this unexpected visit by ordering Plaintiffs' representatives to leave the Company's offices in less than civil terms.

41.     Admit that Messrs. Coster, Bruggen, Schwat, Bonnell, and Cox were appointed to the board by a resolution of the sole member of the Company dated December 12, 2007.  Deny that the Board was "elected" under that resolution.

42.     Admitted.

43.     Admitted.

44.     Deny that Mrs. Coster was actually interested in obtaining representation on the Board.  Admitted that she called for a series of meetings purportedly for the purpose of a vote to approve her family members as members of the Company's Board, but aver that her true motivation was tactical – litigation leverage.

45.     Admit that Mr. Schwat has not voted for any Board candidate proposed by the Mrs. Coster and that no Board candidate proposed by Mrs. Coster has received the necessary vote to be elected to the Board of Directors.

46.     The allegation that a shareholder deadlock exists states a legal conclusion that requires no response.  To the extent that a response beyond the legal conclusion is required, the allegation is denied.  Admit that the Board is currently composed of directors in accordance with the Company's Bylaws.

47.     Admit that Mrs. Coster filed the Custodian Action in June 2018.  Admit that Paragraph 47 quotes a selected portion of Section 226(a)(1) and that the Chancery Court may, in its discretion, appoint a custodian when it deems it necessary to resolve a shareholder deadlock. Deny that the purpose for the suit was "to resolve the shareholder deadlock."

48.     Admitted.

49.     Admitted.

50.     Admit that the August 15 Unanimous Consent resolved to sell 33 1/3 shares of the Company's stock to a company controlled by Defendant Bonnell.  Admit that Mr. Bonnell was a member of the Company's Board of Directors.  The allegation that Mr. Bonnell is an "insider" is a legal conclusion that requires no response.  Nevertheless, Defendants admit that Mr. Bonnell, unlike Mr. Cox (who had no interest in the transaction) and Mr. Schwat (who diluted his own shareholder interest to the same extent as Mrs. Coster's) stood on both sides of the transaction. Admit that the Board resolved to sell 33 1/3 shares of Company stock to Mr. Bonnell to reflect the intent of the Company's shareholders in 2014 (as evidenced by the 2014 Term Sheet) that Mr. Bonnell would become a 1/3 owner of the Company; deny that the stated intent was a pretext.

51.     Admit that no definitive written agreement to sell Mr. Coster's shares in the Company was reached.  Deny that the term sheet provided for a $2.125 million "payout" to Mr. Coster.  The remaining allegations are denied.

52.     Admit that Mr. Bonnell paid $41,289.67—which represented 1/3 of the enterprise value of the Company less the Company's outstanding debt and deficiency in working capital determined by an independent valuation—to acquire 33 1/3 shares of the Company's stock in a sale that has been held to satisfy "entire fairness" scrutiny by the Delaware Supreme Court. Deny the remaining allegations.

53.     Admitted.

54.     Admit that Paragraph 54 accurately quotes Defendants' Amended Answer in the Delaware action.  Further admit that Defendants, who were concerned that the appointment of a custodian could be extremely detrimental to the Company and would not be in its best interests,

were motivated as to the timing of the stock sale by the desire to resolve the purported

shareholder deadlock.  The remaining allegations in Paragraph 54 are denied.

55.     Admitted, except as to the vague allegation that the property is "near" the Wharf

area, which is subjective and does not require a response.

56.     Admit that the property was divided into two properties as described in Paragraph

56.  Deny that Defendants "caused" the property to be divided in such a manner.

57.     Admitted.

58.     Admit that the Kiley property was sold in August 2018 and that the Capitol Park

Tower property was sold in May 2019.  Deny that Defendants "orchestrated" either sale.  The

sale of both properties was directed by the primary equity investor in the properties after that

investor decided it did not want to participate in the development of the Kiley property and

wanted to exit the investment in both properties.  Defendants then participated (with new major

equity investors) in entities that submitted competitive bids for each of the Capital Park Tower

properties, which were accepted by Defendants' original equity partner in arms-length

transactions.

59.     Admit that Mr. Schwat was one of the signatories on certain documents in his

capacity as one of the representatives of both the purchasers and sellers of the Capitol Park

Tower LLC and Capitol Park Tower II LLC transactions.  The remaining allegations in

Paragraph 59 are denied.

60.     Denied.

61.     Admit that Defendants created a new promote entity to hold promote interests and

to then make promote distributions from the Kiley and Capital Park Tower building based on the

ownership structure of the entities that now own those properties.  The remaining allegations in Paragraph 61 are denied.

62.     Admit that Paragraph 62 accurately states Coster Realty's respective ownership interests in Maryland Residential and UIP Maryland Residential VI LLC.  The remaining allegations in Paragraph 62 are denied.

63.     Denied.

64.     Admit that an employee of the Defendants sent an email disclosing the transaction in January 2019.  The remaining allegations in Paragraph 64 are denied.

65.     Denied.

66.     Admit that no opinions of value or valuations were provided with the January 2019 email.  The remaining allegations in Paragraph 66 are denied.

67.     Admitted.

68.     Admit that Defendants responded on January 30 and that this response did not mention a July 2018 appraisal of the Kiley.  The remaining allegations in Paragraph 68 are denied.

69.     Admit that Mr. Schwat's response requested Plaintiffs to make a decision in a few days.  The remaining allegations in Paragraph 69 are denied.

70.     Denied.

71.     Denied.

## DIRECT ALLEGATIONS

72.      The allegations in Paragraph 72 state legal conclusions to which no response is required.  To the extent a response beyond the legal conclusions is required, Defendants deny all allegations.

73.     Defendants lack sufficient information to admit or deny the allegation stated in Paragraph 73 and therefore deny it.

74.     The allegations in Paragraph 74 state legal conclusions to which no response is required.  To the extent a response beyond the legal conclusions is required, Defendants deny all allegations.

75.     The allegations in Paragraph 75 state legal conclusions to which no response is required.  To the extent that response beyond the legal conclusions is required, the allegations in Paragraph 75 are denied.

76.     Denied.

77.     Denied.

78.     Denied.

**DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY UNDER RULE 23.1**

79.     Paragraph 79 states legal conclusions to which no response is required.

80.     Defendants lack sufficient information to determine when Mrs. Coster acquired beneficial ownership of 33 1/3 shares of Company stock, but the Company admits that it currently recognizes Mrs. Coster as those shares' present owner.  Defendants deny that they have engaged in any wrongful course of conduct.

81.     Denied.

82.     Paragraph 82 states a legal conclusion to which no response is required.

83.     Admit that Mrs. Coster has not made a demand on the Company's Board.  The remaining allegations in Paragraph 83 state legal conclusions and require no response.  To the extent that a response is required beyond the legal conclusions, Defendants deny that pre-suit demand would be futile and is excused as a matter of law.  While Defendants admit that all three

members of UIP's Board are named Defendants in the action, Defendants deny that they are interested parties so as to excuse the requirement to make a demand under law.

84.     Denied.

85.     Paragraph 85 states legal conclusions to which no response is required.  To the extent that a response beyond the legal conclusions is required, Defendants admit that Mr. Bonnell was interested in the stock issuance but deny that either Mr. Schwat or Mr. Cox was interested.

86.     Admit that Mr. Schwat and Mr. Bonnell each own one-third of the Company's shares respectively.  The remaining allegations in Paragraph 86 are denied.

87.     Admitted.

88.     Denied.

89.     Denied.

90.     The allegations in Paragraph 90 state legal conclusions to which no response is required.  To the extent a response beyond the legal conclusions is required, the allegations are denied.

## COUNT I
### Breach of Fiduciary Duty
### (Against Defendants Schwat, Bonnell, and Cox)

91.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 90.

92.     Admitted.

93.     Defendants lack sufficient information to admit or deny the allegation in Paragraph 93.

94.     Denied.

95.     Denied.

**COUNT II**
**Derivative Claim for Breach of Fiduciary Duty**
**(Against Defendants Schwat, Bonnell, and Cox)**

96.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 95.

97.    Admitted.

98.    Defendants lack sufficient information to admit or deny the allegation in Paragraph 98.

99.    Denied.

100.    Denied.

**COUNT III**
**Breach of Fiduciary Duty: The Bonnell Stock Sale**
**(Against the Director Defendants and Schwat Realty LLC)**

101.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 100.

102.    Denied.

103.    Admitted.

104.    Denied.

105.    Denied.

**COUNT IV**
**Derivative Claim for Breach of Fiduciary Duty**
**(Against Schwat Realty LLC)**

106.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 105.

107.    Denied.

108.    Denied.

109.    Denied.

## COUNT V
### Fraudulent Misrepresentation & Omission
### (Against Defendants Schwat, Bonnell, Schwat Realty, and Bonnell Realty)

110.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 109.

111.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 55 through 71, as such allegations were incorporated by reference in Paragraph 111 of Plaintiffs' Second Amended Complaint.

112.     Denied.

113.     Denied.

114.     Denied.

115.     Defendants lack information to determine what information Plaintiffs relied upon in declining to invest in the continuing Capitol Park Tower projects, but Defendants note that Plaintiffs were offered the opportunity to invest in the "friends and family" program for the Capital Park Tower building in the January 2019 email and that Plaintiffs declined to do so. The remaining allegations in Paragraph 115 are denied.

116.     Denied.

117.     Paragraph 117 states a legal conclusion to which no response is required.  To the extent a response is required beyond a legal conclusion, the allegations in Paragraph 117 are denied.

## COUNT VI
### Negligent Misrepresentations & Omissions
### (Against Defendants Schwat, Bonnell, Schwat Realty, and Bonnell Realty)

118.     Defendants herein incorporate by reference their responses to the allegations in Paragraphs 55 through 71 and Paragraphs 110 through 117.

119.     Denied.

120.     Denied.

121.     Denied.

122.     Defendants lack information to determine what information Plaintiffs relied upon in declining to invest in the continuing Capitol Park Tower projects, but Defendants note that Plaintiffs were offered the opportunity to invest in the "friends and family" program for the Capital Park Towers building in the January 2019 email and that Plaintiffs declined to do so. The remaining allegations in Paragraph 122 are denied.

123.     Denied.

124.     Paragraph 124 states a legal conclusion to which no response is required.  To the extent a response is required beyond a legal conclusion, the allegations in Paragraph 124 are denied.

### COUNT VII
### Breach of Fiduciary Duty: Capitol Park Tower
### (Against the Director Defendants, Schwat Realty, and Bonnell Realty)

125.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 124.

126.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 55 through 71, as such allegations were incorporated by reference in Paragraph 126 of Plaintiffs' Second Amended Complaint.

127.     Admitted.

128.     Admitted.

129.     Defendants lack information to determine any reliance upon Schwat Realty or Bonnell Realty by Coster Realty.  Otherwise, admitted.

130.     Denied.

131.     Denied.

## COUNT VIII
## Aiding and Abetting Breaches of Fiduciary Duty
## (Against Schwat Realty LLC)

132.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1-131.

133.     Denied.

134.     Denied.

135.     Denied.

136.     Denied.

## COUNT IX
## Derivative Claim for Aiding and Abetting Breaches of Fiduciary Duty
## (Against Schwat Realty LLC)

137.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through 136.

138.     Denied.

139.     Denied.

140.     Denied.

141.     Denied.

142.     Paragraph 142 sets forth legal conclusions to which no response is required.  To the extent that a response is required beyond the legal conclusions, the allegations in Paragraph 142 are denied.

## COUNT X
## Aiding and Abetting Breaches of Fiduciary Duty
## (Against Defendants Schwat, Bonnell, and Cox)

143.     Defendants herein incorporate by reference their responses to the allegations set forth in Paragraphs 1 through Paragraph 142.

144.    Denied that Schwat Realty has been the "controlling shareholder;" otherwise, admitted.

145.    Denied.

146.    Denied.

147.    Denied.

## COUNT XI
### Derivative Claim for Aiding and Abetting Breaches of Fiduciary Duty
### <u>(Against Defendants Schwat, Bonnell, and Cox)</u>

148.    Defendants hereby incorporate by reference their responses to the allegations set forth in Paragraph 1 through Paragraph 147.

149.    Denied that Schwat Realty has been the "controlling shareholder;" otherwise, admitted.

150.    Denied.

151.    Denied.

152.    Denied.

## COUNT XII
### Civil Conspiracy
### <u>(Against All Defendants)</u>

153.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraph 1 through Paragraph 152.

154.    Admitted.

155.    Denied.

156.    Denied.

157.    Paragraph 157 states legal conclusions to which no response is required.  To the extent that a response may be required beyond the legal conclusions, the allegations in Paragraph 157 are denied.

**COUNT XIII**
**Derivative Claim for Civil Conspiracy**
**(Against All Defendants)**

158.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraph 1 through Paragraph 157.

159.    Admitted.

160.    Denied.

161.    Denied.

162.    Paragraph 162 states legal conclusions to which no response is required.  To the extent that a response may be required beyond the legal conclusions, the allegations in Paragraph 162 are denied.

**COUNT XIV**
**Derivative Claim for Declaratory Judgment**
**(Against All Defendants)**

163.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraph 1 through Paragraph 162.

164.    Admit that Defendants owed fiduciary duties to Mrs. Coster.  The remaining allegations in Paragraph 164 are denied.

165.    Paragraph 165 states a legal conclusion to which no response is required.

**COUNT XV**
**Derivative Claim for Injunctive Relief**
**(Against All Defendants)**

166.    Defendants herein incorporate by reference their responses to the allegations set forth in Paragraph 1 through Paragraph 165.  Admit that Defendants owed fiduciary duties to Mrs. Coster and UIP.  The remaining allegations in Paragraph 166 are denied.

167.    Paragraph 167 states a legal conclusion to which no response is required.

**DEFENSES**

FIRST DEFENSE

To the extent that the allegations in Plaintiff's Complaint purport to refer to acts or omissions occurring more than three years before they were first raised in this action the statute of limitations bars relief relating to these claims.

SECOND DEFENSE

To the extent that the allegations in Plaintiffs' Complaint purport to refer to acts or omissions which Mrs. Coster and Coster Realty long knew to be ordinary practices within UIP (such as intracompany loans), the doctrine of laches bars relief relating to these claims.

THIRD DEFENSE

Certain allegations and claims in Plaintiffs' Complaint are barred by the doctrine of res judicata, as the claims share a common nucleus of fact with claims tried in the Delaware Court of Chancery and the claims could have been raised in that venue.

FOURTH DEFENSE

To the extent that certain allegations and claims in Plaintiffs' Complaint relate to business practices that Coster Realty knew of and acquiesced to while Wout Coster was in a leadership position in the Company, such claims are barred by the equitable doctrine of estoppel.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully pray that the Court:

A.      Dismiss the complaint and enter judgment in favor of the Defendants.

B.      Order Plaintiffs to pay Defendants' reasonable attorneys' fees and costs in connection with the preparation, filing, and prosecution of this action.

C.      Order such other relief as this Court deems just and appropriate.

- 20 -

Dated:  October 25, 2021

Respectfully submitted,

/s/ *William C. Miller*

Deborah B. Baum (D.C. Bar No. 393019)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: 202.663.8000
Facsimile: 202.663.8007
deborah.baum@pillsburylaw.com

*Counsel for Defendants Steven Schwat, Peter
Bonnell, Stephen Cox, Schwat Realty LLC,
Bonnell Realty LLC, Cox Realty LLC, and
Nominal Defendant UIP Companies, Inc.*