# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARION COSTER, for herself<br>and derivatively on behalf of<br>UIP COMPANIES INC.<br>1025 Eldorado Avenue<br>Clearwater, FL 33767 | * <br> * <br> * <br> * <br> * <br> * | |
| and | * <br> * | |
| COSTER REALTY LLC<br>1025 Eldorado Avenue<br>Clearwater, FL 33767 | * <br> * <br> * <br> * | |
| *Plaintiffs*, | * <br> * | |
| | * | Civil Action No. 18-CV-1995 |
| v. | * <br> * | |
| STEVEN F. SCHWAT<br>4518 Drummond Avenue<br>Chevy Chase, MD 20815 | * <br> * <br> * <br> * | **COMPLAINT AND JURY DEMAND** |
| PETER J. BONNELL<br>2400 16th Street, NW<br>Apt. 707<br>Washington, DC 20009 | * <br> * <br> * <br> * <br> * | |
| STEPHEN E. COX<br>9608 Hillridge Drive<br>Kensington, MD 20898-3120 | * <br> * <br> * <br> * | |
| SCHWAT REALTY LLC<br>4518 Drummond Avenue<br>Chevy Chase, MD 20815 | * <br> * <br> * <br> * | |
| BONNELL REALTY LLC<br>4518 Drummond Avenue<br>Chevy Chase, MD 20815 | * <br> * <br> * <br> * | |
| COX REALTY LLC<br>9608 Hillridge Drive<br>Kensington, MD 20898-3120 | * <br> * <br> * <br> * | |
| *Defendants*, | * <br> * | |

and                                        *
                                           *
UIP COMPANIES, INC.                        *
140 Q Street, NE, Suite 140B               *
Washington, DC 20002                       *
                                           *
            *Nominal Defendant.*           *
_____          *

## VERIFIED SECOND AMENDED COMPLAINT
## FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiff Marion Coster ("Plaintiff" or "Mrs. Coster"), for herself and derivatively on behalf of UIP Companies, Inc. ("UIP" or the "Company") and Plaintiff Coster Realty LLC, by and through undersigned counsel, hereby allege as their complaint as follows:

### NATURE OF ACTION

1.      Plaintiff Marion Coster is a 50% stockholder in UIP—headquartered in the District of Columbia—co-founded by her late husband, who died in April 2015.  UIP is a highly successful real estate investment and development company specializing in multi-family properties in the Washington, D.C. metropolitan area.

2.      Defendants Steven Schwat ("Schwat"), Peter Bonnell ("Bonnell"), and Stephen Cox ("Cox") (collectively, the "Director Defendants") are all members of the Board of Directors of UIP and, as such, owe fiduciary duties to Mrs. Coster.  At all relevant times, Defendant Schwat Realty LLC has been a stockholder of UIP and thus has fiduciary duties to Mrs. Coster in her capacity as a stockholder.

3.      Since Mr. Coster's death in April 2015, Defendants have engaged in a brazen and unlawful scheme to deny Mrs. Coster, an elderly widow, any financial remuneration from her 50% ownership in UIP, any role in the affairs and governance of UIP, and any real visibility into the considerable financial success of the Company.  At the same time, Defendants have enjoyed

significant financial remuneration from UIP and have used the Company, in substantial part, to further their own financial interests and investments that confer no benefit to Mrs. Coster—all during a period of time in which UIP has thrived in a booming and lucrative D.C.-area real estate market.

4.      Additionally, on August 15, 2018, the Director Defendants wrongfully and illegally diluted Mrs. Coster's ownership interest in UIP by voting to issue 33 1/3 shares of UIP stock to Defendant Bonnell—a UIP Board member and insider.  The primary purpose of that sale was to moot a lawsuit Mrs. Coster filed in the Delaware Chancery Court filed in June 2018 seeking appointment of a custodian under Delaware law to, among things, break a deadlock between Mrs. Coster and Defendant Schwat Realty over the members of the UIP Board of Directors—on which Mrs. Coster to this day has had no representation.

5.      As detailed below, Defendants have improperly placed their own interests ahead of those of Mrs. Coster for years.  Defendants have violated their fiduciary duties and caused substantial pecuniary harm to Mrs. Coster.

6.      Defendants Schwat and Bonnell—individually and/or through Schwat Realty and Bonnell Realty—engaged in a slew of wrongful conduct with respect to an important investment her husband originally made in Capitol Park Tower, a large apartment building in the District of Columbia near the area known as the "Wharf."

7.      Defendants Schwat and Bonnell orchestrated two sales of the real property comprising Capitol Park Tower in which Schwat and Bonnell were—in essence—on both sides of the transactions, signing purchase agreements on behalf of both the purchaser and seller. Defendants Schwat and Bonnell knew that entities they owned were purchasing that real

property at a price substantially below its fair market value—a critical fact they never shared

with Mrs. Coster and/or her wholly-owned LLC, Plaintiff Coster Realty.

8.      Defendants Schwat and Bonnell failed to keep Mrs. Coster adequately apprised of

the status of, or developments concerning, the Capitol Park Tower sales—or to even timely

notify her that they had occurred.  Even worse, Defendants Schwat and Bonnell actively

deceived Mrs. Coster with respect to those sales and their impact on her existing Capitol Park

Tower investment so that they could cut Mrs. Coster out, and pocket more, of the millions of

dollars in financial upside from those below-market sales.

9.      In addition to compensatory damages, Mrs. Coster seeks punitive damages

because Defendants' misconduct has been undertaken with malice against Mrs. Coster and with a

deliberate intention to harm her pecuniary interests and legal rights.  Given the bad faith conduct

of the Defendants, Mrs. Coster further seeks declaratory and injunctive relief: (a) precluding

each Defendant from seeking or accepting indemnification, directly or indirectly, from UIP for

any judgment in this action; and (b) requiring, in the event UIP advances or reimburses

attorneys' fees and costs for any one or more Defendants in connection with this action, that each

Defendant reimburse UIP for the total amount of such advanced or reimbursed attorneys' fees

and costs within thirty days of entry of judgment.

## THE PARTIES

10.     Plaintiff Marion Coster is a citizen of Florida and a stockholder in UIP.

11.     Plaintiff Coster Realty LLC is limited liability company wholly owned by

Plaintiff Marion Coster; its principal place of business is in Clearwater Beach, Florida.

12.     Defendant Steven Schwat is a citizen of Maryland and the President and Chairman of the Board of UIP, which has its principal place of business in the District of Columbia and sometimes operates under the name "Urban Investment Partners."

13.     Defendant Peter Bonnell is a member of the Board of Directors of UIP and a senior-level manager of UIP.  Defendant Bonnell is a citizen of the District of Columbia.

14.     Defendant Stephen Cox is a member of the Board of Directors of UIP and Chief Financial Officer and Secretary of UIP.  Defendant Cox is a citizen of Maryland.

15.     Defendant Schwat Realty LLC is a Maryland limited liability company whose sole member is Defendant Schwat; its principal place of business is at 4588 Drummond Avenue, Chevy Chase, MD 20815.

16.     Defendant Bonnell Realty LLC is a Maryland limited liability company whose sole member is Defendant Bonnell; its principal place of business is at 4588 Drummond Avenue, Chevy Chase, MD 20815.

17.     Defendant Cox Realty LLC is a Maryland limited liability company whose sole member is Defendant Cox; its principal place of business is at 9608 Hillridge Drive, Kensington, MD 20898.

18.     Nominal Defendant UIP Companies, Inc. is a Delaware corporation with its principal place of business in the District of Columbia.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and attorneys' fees.

20.     Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and 1401 because a substantial part of the events and omissions giving rise to the claims in this action occurred in the District of Columbia and, alternatively, because Defendant Bonnell is a citizen of the District of Columbia.

## FACTUAL BACKGROUND

### A.  Formation of UIP

21.     In or about 2007, three individuals formed UIP: Wout Coster ("Mr. Coster"), Defendant Steven Schwat, and Cornelis Bruggen ("Mr. Bruggen").  Each controlled 33 1/3 shares through intermediate entities (Coster Realty LLC, Defendant Schwat Realty LLC, and Bruggen Realty LLC).

22.     Mr. Bruggen left the Company in 2011 and his stock was bought back by the Company sometime thereafter.  Sixty-six and 2/3 shares remained outstanding.

23.     Defendant Schwat is the beneficial owner of 33 1/3 shares of common stock of the Company.  He owns his shares through Schwat Realty LLC.

24.     Following Mr. Coster's death in April 2015, Mrs. Coster became the beneficial owner of the 33 1/3 shares of UIP stock owned by Coster Realty LLC through a marital trust established for the sole benefit of Mrs. Coster. On January 1, 2017, the shares owned by Coster Realty LLC were transferred to Mrs. Coster, who is now the record and beneficial owner of those shares.

### B.  The Company's Considerable Financial Success

25.     From 2007 until his death in April 2015, Mr. Coster was heavily involved in the management and operations of UIP and its affiliated entities.  The Company was, and continues to be, very successful.  According to its website, "[s]ince its inception, UIP has invested more

than $1.2 billion in the local real estate market, acquiring, renovating, selling and owning more than 5,000 rental and condominium units."

26.     The Company's website notes that its "current portfolio of more than 2,400 units in DC and MD is managed primarily by UIP Property Management, Inc."  The website further states that "[c]onstruction and renovations are performed by UIP General Contracting, Inc."

27.     UIP Property Management, Inc. ("UIP PM") and UIP General Contracting, Inc. ("UIP GC") used to be separate, stand-alone companies 50% owned by Mrs. Coster and Schwat Realty LLC, either directly or through intermediate entities.  In or about 2011, UIP PM and UIP GC—along with UIP Asset Management, Inc. ("UIP AM")—were made wholly-owned subsidiaries of UIP Companies, Inc.  Through her rightful 50% ownership interest in UIP Companies, Inc., Mrs. Coster is the rightful owner of 50% of UIP PM, UIP GC, and UIP AM

28.     The revenues of UIP are substantial, exceeding $34 million in 2016 alone.  UIP PM enjoys a steady, significant, and growing monthly revenue stream from fees it charges to manage the multi-unit buildings containing the 2,400 units owned by UIP or its affiliates.  UIP GC enjoys average yearly revenues exceeding $20 million, and Defendants cause UIP AM to receive substantial asset management fees in connection with all or most transactions involving UIP and/or its affiliated entities.

29.     Since Mr. Coster's death in 2015, the Director Defendants have exercised dominion and control over the management and operations of UIP, and its putative subsidiaries, UIP PM and UIP GC.

30.     UIP—and its subsidiaries UIP PM, UIP GC, and UIP AM—have benefitted enormously from the real estate boom in the D.C. area that has continued since approximately

2011.  Since 2015, UIP has been involved in numerous high-dollar real estate transactions,

including the following:

- purchase of a 266-unit apartment building in January 2018 for $95.5 million;

- purchase of a 212-unit apartment building in Gaithersburg, Maryland in fall 2017 for $31 million;

- partnership with another entity to renovate two Howard University dorms in summer 2017 in a $50 million project;

- purchase of a residence hall from George Washington University in summer 2015 for a planned $80 million renovation;

- purchase of an 81-unit apartment building in Northeast Washington, D.C. in summer 2015 for a planned $7 million renovation;

- purchase of a 76-unit apartment building in Northwest Washington, D.C., for a planned $18 million renovation project;

- purchase of a 100-unit apartment building in Northwest Washington, D.C. for $42 million;

- purchased two apartments building in Northwest Washington, D.C. for $20 million; and

- received a $35 million construction loan for a condo project in the "NoMa" area of Washington, D.C.

**C.  Defendants' Prevention of Mrs. Coster's Participation in the Financial Success of UIP**

31.     According to the Company's 2016 tax return, in 2016, Defendant Schwat received

$365,000 in salary from the Company, and Defendant Bonnell, a Senior Vice President of the

Company, received $200,000 in salary.  In addition to generous salaries, Defendants each have

received other remuneration and benefits from UIP.  Each of these Director Defendants'

principal place of work is at UIP's offices in the District of Columbia.

32.     In sharp contrast to the substantial financial benefits enjoyed by Defendants from

UIP's success in a booming real-estate market, Mrs. Coster has received no distributions, salary,

bonuses, or other financial remuneration from UIP since Mr. Coster's death, despite her 50% ownership in the Company.  Continuously since at least April 2015, Defendants, acting intentionally and in bad faith, have structured the Company's finances to avoid realizing a significant net profit.  They have done so to deny Mrs. Coster any profit distributions, dividend payments, or other financial remuneration from her substantial ownership in the Company.  All, or at least a substantial part, of this wrongful and inequitable conduct by Defendants occurred at UIP's offices in the District of Columbia.

33.    Also in bad faith and in violation of their fiduciary duties to Mrs. Coster, Defendants have redirected UIP investment opportunities since at least April 2015—including, without limitation, the real-estate projects identified in Paragraph 30 above—to other entities owned in whole or in part by Defendants, but not by Mrs. Coster.  Defendants have thus used the resources and personnel of UIP (and UIP PM, UIP GC, and UIP AM) to identify, develop, fund and manage large-scale projects in which Defendants have their own financial investments and from which Mrs. Coster does not benefit.  All, or at least a substantial part, of this wrongful and inequitable conduct by Defendants occurred at UIP's offices in the District of Columbia.

34.    As a result of Defendants' unlawful and bad-faith exclusion of Mrs. Coster from any participation in the corporate affairs and governance of UIP (and UIP PM, UIP GC, and UIP AM)—including, without limitation, denying her Board representation and failing to hold the required annual shareholder meetings—Defendants have caused UIP (and UIP PM, UIP GC, and UIP AM) to take significant business risks and incur substantial debts and liabilities without Mrs. Coster's knowledge, approval, or input.

35.    Ultimately, despite her ownership in the Company, Mrs. Coster has received no distributions, dividend payments, or other financial remuneration from the Company since Wout

Coster's death in April 2015. All, or a substantial part, of Defendants' acts and omissions in connection with their bad-faith scheme to deny Mrs. Coster any participation in the financial success of UIP—and its wholly-owned subsidiaries UIP PM, UIP GC, and UIP AM—occurred at UIP's offices in the District of Columbia.

### D. Defendants' Freeze-Out of Mrs. Coster and Failure to Provide Company Books and Records

36.     The Bylaws of UIP require an annual meeting of the Company's "stockholders for the election of directors and the transaction of other business . . . ." In breach of their fiduciary duties, Defendants have failed to hold any annual meetings of UIP's stockholders (Defendant Schwat Realty LLC and Mrs. Coster) since Mr. Coster's death in April 2015. By so doing, Defendants Schwat, Bonnell, and Cox have wrongfully retained their Board of Director seats continuously since April 2015, without any approval by a vote of the Company's stockholders. All, or a substantial part, of Defendants' acts and omissions occurred in the District of Columbia.

37.     Despite her ownership interest Mrs. Coster has not had any representation on UIP's Board of Directors since her husband died in April 2015.

38.     As Board members, Defendants Bonnell and Cox vote consistently in accord with the wishes of Defendant Schwat, the Chairman of the Board. Mrs. Coster is unaware of any instance since April 2015 in which there has been dissent by any Board member from Defendant Schwat's favored position.

39.     Beginning in October 2017, Mrs. Coster has made multiple books and records demands on UIP in the District of Columbia. In violation of their fiduciary duties to Mrs. Coster and in violation of Delaware statute, Defendants have only partially cooperated with the demands, and have failed to provide a significant portion of the requested documentation. By so doing, Defendants seek to prevent Mrs. Coster from gaining visibility into the financial success

of UIP and their self-interested management of the Company.  All, or a substantial part, of these acts and omissions by Defendants occurred in the District of Columbia.

40.     On April 27, 2018, Mrs. Coster's representatives made a noticed and scheduled visit to UIP's offices in the District of Columbia to review documents.  Defendant Schwat greeted these representatives with profanities ("f**k you," "go f**k yourself," "get the f**k out of my office"), and ordered them out of the building.  Defendant Schwat cursed at them and made an obscene gesture as they left.

E.  **Defendants' Stock Sale in Violation of Their Fiduciary Duties**

41.     Under a resolution dated December 12, 2007, Wout Coster, Mr. Bruggen, Defendant Schwat, Defendant Bonnell and Defendant Cox were elected directors of the Company.

42.     As detailed above, Mr. Bruggen has since resigned and Wout Coster has died.

43.     The Company's board of directors thus is comprised entirely of holdover directors—Defendant Schwat, Defendant Bonnell, and Defendant Cox—elected in 2007.

44.     Mrs. Coster has made efforts to obtain representation of her interests on the Board.  Beginning in April 2018, Mrs. Coster called a series of shareholder meetings to propose and vote on new directors.

45.     Defendant Schwat has used his stake in the Company to vote down each of Mrs. Coster's nominated candidates, thus denying Mrs. Coster representation on the Board.

46.     Because of Defendant Schwat's votes, a shareholder deadlock has resulted.  The Company is now run by holdover Directors who were elected fourteen years ago and have not been re-elected since.

47.     To resolve the shareholder deadlock, in June 2018, Mrs. Coster filed an action in Delaware Chancery Court for the appointment of a custodian to oversee UIP pursuant to title 8, section 226(a)(1) of the Delaware Code.  Section 226(a)(1) provides that the Chancery Court may appoint a custodian when "[a]t any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors."  That case is *Coster v. UIP Companies Inc. et al.*, Case No. 2018-0440 (the "Custodian Action").

48.     On July 26, 2018, Defendant Schwat filed his Answer to Mrs. Coster's complaint in the Custodian Action, objecting to the proposed appointment of a custodian.

49.     On August 15, 2018, without prior notice to, or consultation with, Mrs. Coster or her attorneys, Defendants Schwat, Bonnell, and Cox, as the Directors of UIP, adopted a Unanimous Written Consent of the Board of Directors of UIP (the "August 15 Unanimous Consent").

50.     By the August 15 Unanimous Consent, the Board of Directors resolved to sell 33 1/3 shares of stock to Defendant Bonnell—a UIP Board member and insider (the "Bonnell Stock Sale").  As a pretext for the Bonnell Stock Sale, the Board's August 15 Unanimous Consent cites a 2014 term sheet from negotiations between Mrs. Coster's late husband, Defendant Schwat, Defendant Bonnell, and a fourth party (Heath Wilkinson) over a potential sale of Mr. Coster's interest in the company.

51.     Negotiations in 2014, however, had broken down before a final, signed agreement was reached.  As a result, the transaction contemplated by the term sheet, which would have provided for a $2.125 million payout to Mr. Coster for his 50% holdings, was never finalized and such a payout of $2.125 million—an essential term described in the term sheet—never happened.

52.     Per the terms of the August 15 Unanimous Consent, for his one-third share of the Company, Defendant Bonnell paid only $41,289.67, despite the considerable financial success of the Company.

53.     Later in the day on August 15, 2018—the same day he had signed the resolution selling stock to Defendant Bonnell—Defendant Schwat filed an Amended Answer in the Custodian Action.

54.     Defendant Schwat's Amended Answer stated that "UIP has issued the remaining 33 1/3 shares of its stock and sold it at fair market value to [Defendant] Bonnell's entity, Bonnell Realty, LLC . . ."  The Amended Answer went on to state, "Given the issuance of additional stock, as described herein . . . Defendants expect to move for judgment on the pleadings." The Amended Answer further stated a new affirmative defense: "The Complaint is moot." The transparent and bad-faith purpose of the Bonnell Stock Sale was to moot the Custodian Action and prevent the Delaware Chancery Court from appointing a custodian by diluting Mrs. Coster's 50% interest in the Company.  By doing so, the Directors wrongfully maintained their Board seats, their officer positions, and their control over the Company to the exclusion and detriment of Mrs. Coster and her rights as a Company shareholder.

   **F.     Capitol Park Tower**

55.     Commencing in or about November 2013, Plaintiff Coster Realty held ownership interests—through its 48.75% ownership of UIP Maryland Residential LLC ("Maryland Residential") and 12.74% interest in UIP 301 Invest LLC ("UIP 301 Invest")—in the District of Columbia apartment complex known as "Capitol Park Tower," located near the now-thriving "Wharf" development along D.C.'s Southwest waterfront neighborhood.

56.     Upon UIP effecting its purchase in November 2013, the Capitol Park Tower property was owned by Capitol Park Tower LLC.  In December 2015, Defendants caused the Capitol Park Tower property to be divided into a property containing a 289-unit apartment building known as "Capitol Park Tower" (owned by Capitol Park Tower LLC) and a property containing an undeveloped lot (owned by Capitol Park Tower II LLC) upon which was later erected a 315-unit apartment building known as "The Kiley."

57.     Despite the division of the real-property parcel in December 2015, Coster Realty's ownership interest remained unchanged: Coster Realty held identical interests in the original Capitol Park Tower LLC and the new entity, Capitol Park Tower II LLC.

58.     In August 2018, Defendants Schwat and Bonnell—both directly in their capacities as UIP Board members and indirectly through the ownership of Schwat Realty and Bonnell Realty, respectively (collectively, hereafter, the "CPT Defendants")—orchestrated a sale of the undeveloped lot owned by Capitol Park Tower II LLC and a recapitalization of ownership interests in Capitol Park Tower LLC, which was then sold on or about May 31, 2019 (collectively, the "CPT Transactions").

59.     The CPT Defendants were—in essence—on both sides of the CPT Transactions. Defendant Schwat signed the Purchase Agreements on behalf of both the purchaser and seller for both Capitol Park Tower LLC and Capitol Park Tower II LLC.  Despite this conflict of interest, the CPT Defendants did not cause a full independent appraisal or valuation to be conducted as to the fair market value of all the real property sold as part of the CPT Transactions.  The CPT Defendants knew from broker opinions and appraisals they were purchasing those assets at a price substantially below their fair market value—a critical fact they never shared with Coster Realty.

60.     The CPT Defendants deliberately withheld from Coster Realty the status of, and essential facts concerning, the CPT Transactions.  Among other failures to inform, the CPT Defendants never informed Coster Realty of valuations and appraisals (despite Plaintiffs requesting such documents) of the Capitol Park Tower properties.

61.     With the intent to cut Plaintiffs out of the many millions of dollars in value the CPT Defendants knew existed with respect to Capitol Park Tower II LLC, and specifically construction of the Kiley—in no small part because they effectively caused the Kiley land to be sold to themselves for many millions of dollars below its fair market value—the CPT Defendants used a new entity, UIP Maryland Residential 6 LLC ("Maryland Res 6"), to hold the "promote" interest in the Kiley following the closing of its sale on August 21, 2018.  UIP Maryland Residential 6 LLC has also held the original Capitol Park Tower apartment complex since its May 2019 sale.

62.     Although Coster Realty held a 48.75% interest in Maryland Residential, it holds no interest in UIP Maryland Residential 6 LLC.  CPT Defendants used UIP Maryland Residential 6 LLC to purchase the two properties in order to cut Coster Realty out of any future profits or financial upside from the CPT properties.

63.     After the sale of Capitol Park Tower II land—on which the Kiley would be built—closed on August 21, 2018, the CPT Defendants failed to timely inform Coster Realty of the sale, even though Coster Realty was a managing member of both UIP 301 Invest LLC and Maryland Residential.  Whereas Defendants informed *other* investors in UIP 301 Invest LLC— referred to as "friends and family" investors"—in September 2018 of their option to roll over all or part of their existing investment into the Kiley or the original Capitol Park Tower building, Defendants never informed Coster Realty of that option.

64.     Rather than promptly inform Coster Realty of the CPT Transactions—including the sale of the valuable Capitol Park Tower II LLC land—the CPT Defendants delayed almost five months.  A cursory email dated January 15, 2019, sent to Mrs. Coster by a UIP subordinate but drafted by the CPT Defendants (the "1/15/19 Email") vaguely described the CPT Transactions and purported to set forth Coster Realty options for rolling over its existing Capitol Park Tower into the restructured entities.

65.     Yet the 1/15/19 Email contained materially false and misleading statements. Specifically, the 1/15/19 Email falsely and misleadingly stated that, in order for Coster Realty to rollover its original investment (made in November 2013) into the Kiley, Mrs. Coster would have to sign personal guarantees.  In fact, as the CPT Defendants were fully aware when they drafted the content of the 1/15/19 Email, Coster Realty could have rolled over all or a portion of its original interest in Capitol Park Tower LLC into the Kiley as a "friends and family" investor without signing any personal guarantees—a rollover option given to, and exercised by, other Capitol Park Tower "friends and family" investors in September 2018.  The CPT Defendants falsely stated to Mrs. Coster that she on behalf of Coster Realty would be required to sign personal guarantees because they knew that Mrs. Coster, due to her financial situation, would never agree to do so.  By duping Coster Realty into not rolling over its existing interest in the Kiley, the CPT Defendants grabbed for themselves a larger portion of the millions of dollars in financial windfall they obtained when entities they controlled sold the Kiley land to themselves for almost $17 million less than its fair market value.

66.     To make matters worse, the 1/15/19 Email also omitted material facts about the CPT Transactions.  In the 1/15/19 Email, the CPT Defendants did not disclose to Plaintiffs a critical and material fact: that several broker opinions of value—and a July 2018 appraisal by a

- 16 -

prospective lender—valued the Kiley land alone at millions of dollars above the $12.5 million

that entities owned by the CPT Defendants purchased it for on August 21, 2018.

67.     Mrs. Coster responded to the 1/15/19 Email four days later with written questions

and requests for further information from Schwat and Bonnell.  Mrs. Coster's January 19 email

requested as follows:

> Please send me documents (a) reflecting an assessment of the value of both
> properties – the lot on which building is to be done, and the existing tower;
> (b) identifying who will be doing the construction work; (c) identifying the
> purchasers in both cases; (d) showing whether or not the ownership entity
> has offered the land up for public sale; (e) clarifying the ownership structure
> currently in place; and (f) setting out the flow of proceeds from both sales.
> Also if I am correct, the deal for the construction of the new tower has
> proceeded to this point without Pete or Steve ever consulting me about my
> possible interest in investing. Steve, please send me a timeline of how long
> this deal has been in the making, as well as an explanation of its current
> status.

68.     The CPT Defendants delayed almost two weeks before responding to Mrs.

Coster's January 19 email.  When they finally did respond on January 30, it was in the form of

an email from Mr. Schwat comprised of a rambling, self-serving narrative that failed to answer

the questions posed by Mrs. Coster or to provide the specific documents and information she had

requested.  As just one example, even though they had it in their possession, custody or control,

the CPT Defendants failed to inform Plaintiffs of the July 2018 appraisal of the Kiley parcel that

assessed its value at over $29.4 million—almost $17 million more than the August 2018 sale

price of $12.5 million.

69.     The CPT Defendants' January 30 email also falsely and misleadingly suggested

urgency in Coster Realty deciding about rolling over all or a portion of its existing investment.

Mr. Schwat falsely and misleadingly suggested that Mrs. Coster would need to make that

decision on Coster Realty's behalf "in the next couple of days"—even though the CPT

Defendants waited over five months to inform Mrs. Coster of the sale of the Kiley in August 2018.  And as with the 1/15/19 Email, Mr. Schwat's January 30 email about reinvesting in the existing Capitol Park Tower building yet again failed to inform Coster Realty of its option to rollover its existing investment *without* signing guarantees.

70.     To make matters even worse, the CPT Defendants furthered their own self-interests by using corporate funds owned by UIP—and its subsidiaries UIP PM, UIP GC, and UIP AM—to fund their self-enriching purchases of the land for the Kiley and the original Capitol Park Tower building.  In disregard of the corporate form and Mrs. Coster's 50% interest in UIP, the CPT Defendants, along with Defendant Cox, caused well over one million dollars owned by UIP and its subsidiaries to fund the purchase of CPT and CPT by entities owned and controlled by them, benefitting only themselves with no corresponding benefit to Plaintiffs.

71.     Coster Realty's interest in Capitol Park Tower was valued at $3.75 million in the spring of 2014.  As a result of CPT Defendants improper self-serving actions, Coster Realty only received approximately $700,000 from the CPT Transactions, despite the booming real estate market in Southwest D.C. that came after the 2014 valuation.

## DIRECT ALLEGATIONS

72.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.  Consequently, at all relevant times, each of the Director Defendants had a duty to Mrs. Coster (a) to administer the affairs of the Company skillfully, fairly, diligently, carefully and honestly; (b) to act solely in the interests of the Company and its stockholders and not in their personal interests; (c) to safeguard and protect the Company's assets and property; (d) not to waste or acquire for themselves any assets or property

of the Company; (e) not to favor their own interests illegally or improperly in the management of the affairs, property and assets of the Company; (f) not to act deliberately in a manner which 7injures Mrs. Coster as a stockholder of the Company; (g) not to acquire illegally for themselves any asset or property of the Company; (h) to keep honest, accurate and correct accounts of all of the Company's affairs, business and transactions; and (i) to perform diligently and faithfully all of the duties devolving upon them as officers and directors of the Company.

73.     Mrs. Coster relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those duties.

74.     Each Director Defendant has breached his fiduciary duties—including the duty of loyalty—to Mrs. Coster consistently, repeatedly, and in numerous respects since at least April 2015 by acting in bad faith to advance their own self-interests and the interests of their respective wholly-owned companies—namely, Schwat Realty LLC, Bonnell Realty LLC, and Cox Realty LLC (collectively, the "LLC Defendants").  Such breaches by the Director Defendants include, without limitation:

        (a)     Intentionally and in bad faith, structuring the Company's finances (and those of UIP PM, UIP GC, and UIP AM) to avoid realizing a significant net profit so as to deny Mrs. Coster any profit distributions, dividend payments, or other financial remuneration from her 50% ownership of UIP;

        (b)     Redirecting, in bad faith, UIP investment opportunities—including, without limitation, the real-estate projects identified in Paragraph 30 above—to other entities owned in whole or in part by Defendants, but not by Mrs. Coster, thereby enriching themselves, to the detriment of Mrs. Coster;

(c)     Providing below-market pricing to contracts between Company subsidiaries (including UIP PM and UIP GC) so as to create excess profits and returns in entities controlled and owned—directly or indirectly—by Defendants and their respective LLCs, but in which Mrs. Coster has no ownership interest;

(d)     Using, in bad faith, the employees, resources, and offices of UIP (and UIP PM, UIP GC, and UIP AM) to identify, purchase, develop, and manage real-estate investment projects in which Defendants have their own financial investments and from which Mrs. Coster does not benefit;

(e)     Failing to hold any annual meetings of its stockholders) since Mrs. Coster's husband died in April 2015, as required by UIP's bylaws, thereby wrongfully and in bad faith denying Mrs. Coster any representation on the Board of Directors, despite her 50% ownership interest;

(f)     Consistently voting, in bad faith and with an intent to harm Mrs. Coster and favor Schwat Realty LLC, in accord with the wishes of Defendant Schwat, thus favoring one Company stockholder at the expense of the other;

(g)     Intentionally and in bad faith, refusing to fully comply with lawful and proper demands by Mrs. Coster for access to the Company's books and records, thereby obscuring from Mrs. Coster the full extent of Defendants' self-interested management of the Company to the detriment of Mrs. Coster;

(h)     Intentionally and in bad faith, causing UIP (and UIP PM, UIP GC, and UIP AM) to take significant business risks and incur substantial debts and liabilities without Mrs. Coster's knowledge, approval, or input;

(i)     By causing the Company, its subsidiaries, and various Company affiliates to make improper consulting, bonus, and other payments and benefits to the Director Defendants and their respective LLC entities;

(j)     Improperly using Company funds to pay Schwat Realty and Bonnell Realty's attorneys' fees and defense costs in lawsuits filed by Coster Realty in state courts relating to promote entities to which the Company is not a party; and

(k)     Managing the Company's cash and finances in such a manner so as to avoid Mrs. Coster receiving any remunerative benefit from the Company's receipt of millions of dollars in forgivable loans (and thus effectively tax-free grants) under the U.S. Government's Paycheck Protection Program.

75.     At all relevant times, Defendant Schwat Realty LLC ("Schwat Realty")—acting through Defendant Schwat, its sole member—has been the controlling stockholder of UIP because the Board of Directors was under its actual control and influence.  Defendant Schwat is the Chairman of the Board.  At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to Mrs. Coster as the non-controlling shareholder of UIP.

76.     The other two Board members—Defendants Bonnell and Cox—are under the control and influence of Defendant Schwat.  For years, the Board has done the bidding of Schwat Realty and has promoted Schwat Realty's interests over those of Mrs. Coster's.  Schwat is President of UIP, and Bonnell and Cox both hold their officer positions at his discretion.  Upon information and belief, Defendants Bonnell and Cox have never cast Board votes contrary to the wishes of Defendant Schwat; instead, they rubber stamp any and every proposal made to the Board by Defendant Schwat.

77.     Schwat Realty has breached its fiduciary duties to Mrs. Coster by promoting its own interests as a UIP stockholder ahead of Mrs. Coster's interests and has repeatedly acted towards Mrs. Coster with a lack of probity and fair dealing, and has visibly departed from the standards of fair dealing upon which every stockholder is entitled to rely.  Since Mr. Coster's death in April 2015, Schwat Realty has engaged in an unlawful and wrongful "freeze-out" of Mrs. Coster from the corporate governance of UIP and from any participation in the financial success of the Company (and its putative subsidiaries, UIP PM and UIP GC).  Additionally, Schwat Realty has caused UIP (and UIP PM and UIP GC), in substantial part, to use its employees, offices, and other corporate resources to further Schwat Realty's own financial investments—and/or those of its sole member, Defendant Schwat—that confer no benefit to Mrs. Coster, including the projects identified in Paragraph 30 above.

78.     As a result of Defendants' wrongful conduct, Mrs. Coster has suffered damages in excess of $15 million, and continue to accrue.

**DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY UNDER RULE 23.1**

79.     In the alternative to direct claims, some of the claims and damages in this matter may be deemed to arise from rights of UIP rather than from Mrs. Coster's direct rights as a stockholder. Mrs. Coster therefore brings this action in part derivatively to redress injuries suffered by UIP as a direct result of the breaches of fiduciary duties by the individual defendants.

80.     Mrs. Coster has beneficially owned UIP stock continuously during the wrongful course of conduct by Defendants alleged herein and through the present.

81.     Mrs. Coster, as the only UIP stockholder that has not participated in the wrongful course of conduct by Defendants, will fairly and adequately represent the interests of UIP stockholders who are similarly situated in enforcing the rights of UIP.

82.     This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

83.     Mrs. Coster has not made a demand on the UIP Board to bring suit asserting the claims set forth herein because pre-suit demand would be futile and is excused as a matter of law. All three members of UIP's Board—Schwat, Bonnell, and Cox—engaged in the wrongdoing at issue in this case, are named as Defendants in this action, and are interested parties for each of the claims in this matter.

84.     Defendants Schwat, Bonnell, and Cox engaged in a course of conduct designed to benefit themselves—and each of their respective LLCs (Defendants Schwat Realty, Bonnell Realty, and Cox Realty)—at the expense of Mrs. Coster and UIP, including redirecting UIP investment opportunities and misusing UIP resources.

85.     Defendants Schwat, Bonnell, and Cox were also directly interested in the Bonnell Stock Sale described above.

86.     On the basis of the wrongful Bonnell Stock Sale, Defendants Schwat Realty and Bonnell Realty purport to own two-thirds of the Company's shares, and therefore Defendants Schwat and Bonnell purport to control the Company.

87.     Defendant Schwat has expressly supported continuation of the existing Board in office.  He has alleged in pleadings filed in the Custodian Action that the stock sale to Defendant Bonnell "moots" the Custodian Action.

88.     By orchestrating and undertaking the Bonnell Stock Sale, Defendants Schwat, Bonnell, and Cox—and the LLC Defendants—have engaged in self-dealing, have misused their positions and authority within the Company, have committed breach of trust and have breached the fiduciary duties they owe to the shareholders – in this case, Mrs. Coster.

89.     Defendants Schwat, Bonnell, and Cox intentionally disregarded their oversight responsibilities, and acted with bad faith.

90.     Given the Directors' bad faith, a demand in this case under Federal Rule of Civil Procedure 23.1 would be futile.

## COUNT I
### Breach of Fiduciary Duty: Company Finances and Management
### (Against Defendants Schwat, Bonnell, and Cox)

91.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 90 above as if fully set forth herein.

92.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.

93.     Mrs. Coster relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those duties.

94.     Each Director Defendant has breached his fiduciary duties—including the duty of loyalty—to Mrs. Coster consistently, repeatedly, and in numerous respects since at least April 2015 by acting in bad faith to advance their own self-interests (and the interests of the LLC Defendants) to the detriment of Mrs. Coster, as detailed above, including without limitation as described in Paragraph 74 above.

95.     Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from each Director Defendant's breaches of his fiduciary duties to her.

## COUNT II
### Derivative Claim for Breach of Fiduciary Duty
### (Against Defendants Schwat, Bonnell, and Cox)

96.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 95 above as if fully set forth herein.

97.     At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to UIP and its shareholders.

98.     UIP relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those duties.

99.     Each Director Defendant has breached his fiduciary duties—including the duty of loyalty—to UIP and its shareholders consistently, repeatedly, and in numerous respects since at least April 2015 by acting in bad faith to advance their own self-interests (and the interests of the LLC Defendants) to the detriment of UIP and its non-controlling shareholder, as detailed above, including without limitation as described in Paragraph 74 above.

100.    UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from each Director Defendant's breaches of his fiduciary duties.

## COUNT III
### Breach of Fiduciary Duty: The Bonnell Stock Sale
### (Against the Director Defendants and Schwat Realty LLC)

101.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 100 as if fully set forth herein.

102.    At all relevant times, Defendant Schwat Realty—acting through Defendant Schwat, its sole member—has been the controlling stockholder of UIP because the Board of Directors was under its actual control and influence.  Defendant Schwat is the Chairman of the

Board.  At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to Mrs. Coster as the non-controlling shareholder of UIP.

103.    As members of the Company's Board of Directors, each of the Director Defendants owed fiduciary duties to Mrs. Coster as a shareholder of the Company.

104.    Despite their fiduciary duties to Mrs. Coster, Schwat Realty and the Director Defendants breached their fiduciary duties to Mrs. Coster by orchestrating, approving, and undertaking the Bonnell Stock Sale as described in Paragraphs 41 through 54 above.  In so doing, Defendants promoted their own interests ahead of Mrs. Coster's interests.  Defendants thus acted with a lack of probity and fair dealing with respect to the Bonnell Stock Sale, and visibly departed from the standards of fair dealing upon which every stockholder is entitled to rely.

105.    Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from the Director Defendants' and Schwat Realty's breaches of fiduciary duties in connection with the Bonnell Stock Sale.

**COUNT IV**
**Derivative Claim for Breach of Fiduciary Duty**
**(Against Schwat Realty LLC)**

106.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 105 as if fully set forth herein.

107.    At all relevant times, Defendant Schwat Realty—acting through Defendant Schwat, its sole member—has been the controlling stockholder of UIP because the Board of Directors was under its actual control and influence.  Defendant Schwat is the Chairman of the Board.  At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary

duties—including the duties of good faith and fair dealing—to UIP and its non-controlling shareholder.

108.    Schwat Realty has breached its fiduciary duties to UIP and its non-controlling shareholder by promoting its own interests as a UIP stockholder ahead of UIP and its non-controlling shareholder's interests and has repeatedly acted towards UIP and its non-controlling shareholder with a lack of probity and fair dealing, and has visibly departed from the standards of fair dealing upon which every stockholder is entitled to rely.

109.    UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from Schwat Realty's breaches of its fiduciary duties.

**COUNT V**
**Fraudulent Misrepresentation & Omission**
**(Against Defendants Schwat, Bonnell, Schwat Realty, and Bonnell Realty)**

110.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 109 as if fully set forth herein.

111.    The background, nature, and circumstances of the CPT Transactions involving Capitol Park Tower and the Kiley are described at Paragraphs 55 through 71 above, and are hereby incorporated by reference into this Count V.

112.    The 1/15/19 Email to Plaintiffs, drafted by and on behalf of the CPT Defendants, contained a materially false statement—a statement the CPT Defendants knew to be false. Specifically, the 1/15/19 Email falsely stated that, in order for Coster Realty to rollover its original Capitol Park Tower investment (made in November 2013) into the Kiley going forward, Mrs. Coster on behalf of Coster Realty would be required to sign personal guarantees— something the CPT Defendants knew that Mrs. Coster, due to her financial situation, would never agree to do.  In fact, as the CPT Defendants were fully aware when they drafted the

contents of the 1/15/19 Email, Coster Realty could have rolled over all or a portion of its original Capitol Park Tower LLC investment as a "friends and family" investor without signing any personal guarantees—a rollover option given to, and exercised by, other Capitol Park Tower "friends and family" investors in September 2018.

113.   The CPT Defendants intentionally induced Plaintiffs to rely on the materially false statement in the 1/15/19 Email about guarantees supposedly being required to rollover Coster Realty's existing investment (made in November 2013) into the entities that purchased the Kiley land on August 21, 2018.  The CPT Defendants falsely stated to Mrs. Coster that she on behalf of Coster Realty would be required to sign personal guarantees because they knew that Mrs. Coster, due to her financial situation, would never agree to do so.  By duping Mrs. Coster into not rolling over her existing investment, the CPT Defendants grabbed for themselves a larger portion of the millions of dollars in financial windfall they obtained when entities they controlled sold the Kiley land to themselves for almost $17 million less than its fair market value.

114.   The 1/15/19 Email also omitted material facts about the CPT Transactions.  In the 1/15/19 Email, the CPT Defendants did not disclose to Plaintiffs a critical and material fact: that several broker opinions of value—and a July 2018 appraisal by a prospective lender—valued the Kiley land alone at millions of dollars more than the $12.5 million it was purchased for on August 21, 2018, by entities controlled by the CPT Defendants.  The 1/15/19 Email also omitted the material fact that Coster Realty could have carried over its existing CPT investment (originally made in November 2013) into the Kiley after the August 21, 2018 closing on the sale without making Mrs. Coster/Coster Realty making guarantees, just as other "friends and family" investors were given an opportunity to do—and did—in September 2018.  The CPT Defendants deliberately and maliciously never informed Mrs. Coster/Coster Realty of that option.

115.    As intended by the CPT Defendants, Mrs. Coster acted in reliance on the CPT

Defendants' materially false statements and willful omissions described in Paragraphs 55 and 71

above.  Had Mrs. Coster known the true facts—that Defendants had caused entities they own and

control to purchase the Kiley land in August 2018 for almost $17 million less than its fair market

value and that Coster Realty could have rolled over its existing investment (originally made in

November 2013) into the Kiley—Mrs. Coster would have elected to do so.  In fact, since August

2018, Mrs. Coster has elected to stay in another UIP-related investment instead of accepting

cash-out opportunities presented by the Defendants.

116.    Mrs. Coster/Coster Realty have suffered damages, in an amount to be proved at

trial, from acting in reliance on the CPT Defendants' materially false statements and willful

omissions.

117.    In addition to compensatory damages, Mrs. Coster should be awarded punitive

damages against the CPT Defendants in an amount to be proved at trial because the CPT

Defendants' fraudulent conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or

reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of her

rights.

**COUNT VI**
**Negligent Misrepresentations & Omissions**
**(Against Defendants Schwat, Bonnell, Schwat Realty, and Bonnell Realty)**

118.    The background, nature, and circumstances of the CPT Transactions involving

Capitol Park Tower and the Kiley is described at Paragraphs 55 through 71 and Paragraphs 110

through 117 above, and are hereby incorporated by reference into this Count VI.

119.    The 1/15/19 Email to Plaintiffs, drafted by and on behalf of the CPT Defendants,

contained a materially false statement—a statement the CPT Defendants knew or reasonably

- 29 -

should have known to be false.  Specifically, the 1/15/19 Email falsely stated that, in order for Coster Realty to rollover its original Capitol Park Tower investment (made in November 2013) into the Kiley going forward, Coster Realty/Mrs. Coster would be required to sign personal guarantees—something the CPT Defendants knew that Mrs. Coster, due to her financial situation, would never agree to do.  In fact, as the CPT Defendants knew or reasonably should have known when they drafted the content of the 1/15/19 Email, Coster Realty could have rolled over all or a portion of its original CPT investment into the Kiley as a "friends and family" investor without signing any personal guarantees—a rollover option given to, and exercised by, other CPT "friends and family" investors in September 2018.

120.    The 1/15/19 Email also negligently omitted material facts about the CPT Transactions that the CPT Defendants had a duty to Coster Realty to disclose.  In the 1/15/19 Email, the CPT Defendants did not disclose to Mrs. Coster/Coster Realty a critical and material fact: that several broker opinions of value—and a July 2018 appraisal by a prospective lender— valued the Kiley land alone at millions of dollars more than the $12.5 million entities controlled by the CPT Defendants purchased it for on August 21, 2018.

121.    The 1/15/19 Email also omitted the material fact—which the CPT Defendants had a duty to disclose—that Coster Realty could have carried over its existing CPT investment (originally made in November 2013) into the Kiley without Mrs. Coster/Coster Realty making guarantees, just as other "friends and family" investors were given an opportunity to do—and did—in September 2018.  The CPT Defendants knew or reasonably should have known that both such omissions by them were material to, and would be relied upon by Coster Realty, in making its decision on whether to rollover its existing Capitol Park Tower investment (originally made in

November 2013) into one or more entities that owned the Kiley as a result of the CPT Transactions.

122.    Had Coster Realty/Mrs. Coster known the true facts—that Defendants had caused entities they own and control to purchase the Kiley land in August 2018 for almost $17 million less than its fair market value and that Coster Realty could have rolled over its existing investment (originally made in November 2013) into the Kiley—Mrs. Coster would have elected to do so.  In fact, since August 2018, Mrs. Coster has elected to stay in another UIP-related investment instead of accepting cash-out opportunities presented by the Defendants.

123.    Mrs. Coster/Coster Realty have suffered damages, in an amount to be proved at trial, from acting in reliance on the CPT Defendants' materially false statements and omissions described above.

124.    In addition to compensatory damages, Mrs. Coster should be awarded punitive damages against the CPT Defendants in an amount to be proved at trial because the CPT Defendants' wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of her rights.

**COUNT VII**
**Breach of Fiduciary Duty: Capitol Park Tower**
**<u>(Against the Director Defendants, Schwat Realty, and Bonnell Realty)</u>**

125.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 124 above as if fully set forth herein.

126.    The background, nature, and circumstances of the CPT Transactions involving Capitol Park Tower and the Kiley is described at Paragraphs 55 through 71 above, and are hereby incorporated by reference into this Count V.

127.    At all relevant times, the Director Defendants, as members of the UIP's Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.  Mrs. Coster relied upon Defendants Schwat, Bonnell, and Cox to conduct themselves in accordance with those fiduciary duties with respect to UIP.

128.    At all relevant times, Schwat Realty and Bonnell Realty, as owners and managing members of UIP 301 Invest LLC, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Coster Realty in its capacity as a 12.738% owner and managing member of UIP 301 Invest.  Coster Realty relied upon Schwat Realty and Bonnell Realty to conduct themselves in accordance with those fiduciary duties with respect to UIP 301 Invest.

129.    At all relevant times, Schwat Realty and Bonnell Realty, as owners and managing members of UIP Maryland Residential LLC, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Coster Realty in its capacity as a 48.75% owner and managing member of Maryland Residential.  Coster Realty relied upon Schwat Realty and Bonnell Realty to conduct themselves in accordance with those fiduciary duties with respect to Maryland Residential.

130.    The Director Defendants breached their fiduciary duties to Mrs. Coster—and Schwat Realty and Bonnell Realty breached their fiduciary duties to Coster Realty—in numerous ways with respect to the CPT Transactions by acting in bad faith to advance their own self-interests (and the interests of their respective LLCs) to the detriment of Mrs. Coster and Coster Realty.  Those breaches of fiduciary duty in connection with the CPT Transactions include, without limitation, the following:

(a) **Failure to Obtain Independent Appraisals**.  Defendants were—in essence—on both sides of the CPT Transactions, signing the Purchase Agreements for both Capitol Park Tower LLC and Capitol Park Tower II LLC on behalf of both the purchaser and seller.  Despite this conflict of interest, the CPT Defendants did not cause a full independent appraisal or valuation to be conducted as to the fair market value of each of the two real property parcels sold in the CPT Transactions.  The CPT Defendants knew from broker opinions and appraisals that they were purchasing each property at millions of dollars less than its fair market value—a critical fact they never shared with Coster Realty.

(b) **Failure to Adequately Inform**.  Defendants deliberately failed to update Plaintiffs—and withheld from Plaintiffs important and material facts concerning—the status of, and essential facts concerning, the CPT Transactions.  Among other failings, the CPT Defendants failed to inform Coster Realty of the valuations and appraisals concerning Capitol Park Tower/The Kiley (despite Coster Realty requesting such documents).  After the August 21, 2018 sale of the Kiley, Defendants failed to timely inform Mrs. Coster/Coster Realty about it.  Instead, Defendants waited until almost five months later.  Whereas Defendants informed other investors in UIP 301 Invest—referred to as "friends and family" investors"—in September 2018 of their option to roll over all or part of their existing investment into the Kiley, Defendants wrongfully did not provide Coster Realty with that option.

(c) **Creating a New Promote Entity.**  To cut Coster Realty out of the many millions of dollars in profit they knew existed with respect to the Kiley—in no small part because Defendants effectively caused CPT II to be sold to themselves for a fraction of

its fair market value—Defendants created a new entity, UIP Maryland Residential 6 LLC,

hold the "promote" interests going forward instead of the existing Maryland Residential

entity.  That caused a profit distribution event for Maryland Residential as a result of the

August 21, 2018 sale of the Kiley.  Defendants then manipulated Mrs. Coster/Coster

Realty—by way of false, misleading, and incomplete information concerning the CPT

Transactions—into not rolling over any portion of its existing interest in Capitol Park

Tower (originally obtained in November 2013) into the Kiley.

     **(d) <u>Failing to Provide Requested Material Information</u>.**  On January 19, 2019,

Mrs. Coster, on behalf of Coster Realty, requested that Defendants provide her

information and documents concerning the CPT Transactions, including documents

"reflecting an assessment of the value of both properties . . . [,] clarifying the ownership

structure currently in place . . . [and] whether or not the ownership entity has offered the

land up for public sale."  Mrs. Coster also requested "a timeline of how long this deal has

been in the making, as well as an explanation of its current status."  Defendants

inexplicably delayed almost two weeks before responding to Mrs. Coster's January 19

email.  On January 30, 2019, Mr. Schwat, on behalf of Defendants, provided a rambling,

self-serving narrative that failed to answer the questions posed by Mrs. Coster.  Nor did

Defendants ever provide the documents requested by Mrs. Coster.  As just one example,

even though they had it in their possession, custody or control, the CPT Defendants failed

to inform Plaintiffs of a July 2018 valuation of the Kiley undeveloped land parcel that

assessed its value at over $29.4 million—almost $17 million more than the August 2018

sale price of $12.5 million.  Mr. Schwat's January 30, 2019 email also falsely and

misleadingly suggested urgency in Mrs. Coster deciding "in the next couple of days"

- 34 -

about reinvesting in the existing Capitol Park Tower building, even though the ultimate sale of the building did not close until May 31, 2019.

      **(e)** **Using UIP Corporate Funds for the CPT Transactions.** Defendants also wrongfully caused funds owned by the Company—and its subsidiaries UIP PM, UIP GC, and UIP AM—to fund their self-enriching purchases of CPT and CPT II. In disregard of the corporate form—and with no regard for Mrs. Coster's 50% interest in UIP and its subsidiaries—the CPT Defendants, along with Defendant Cox, caused over one million dollars owned by UIP and its subsidiaries to be used by entirely different entities to fund the purchase of CPT and CPT II by entities Defendants directly or indirectly held ownership interests, benefitting only themselves with no corresponding benefit to Mrs. Coster/Coster Realty.

131.    Mrs. Coster and Coster Realty have suffered substantial pecuniary harm, in amounts to be proved at trial, from each Defendant's breaches of fiduciary duties to her in connection with the CPT Transactions.

## COUNT VIII
### Aiding and Abetting Breaches of Fiduciary Duty
### (Against Schwat Realty LLC)

132.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 131 above as if fully set forth herein.

133.    At all relevant times, the Director Defendants, as members of the Board of Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to Mrs. Coster in her capacity as a stockholder of UIP.

134.    Since at least April 2015, the Director Defendants have breached their fiduciary duties to Mrs. Coster in multiple respects, as described above. Schwat Realty knowingly

participated in—indeed, actively encouraged, if not directed—each of those breaches by the

Directors Defendants of their fiduciary duties to Mrs. Coster.   Schwat Realty did so because

each of those wrongful acts and omissions directly benefitted Defendant Schwat, the sole

member of Schwat Realty, to the detriment of Mrs. Coster.

135.     By actively participating in the Director Defendants' longstanding scheme to deny

Mrs. Coster, an elderly widow, any financial remuneration from her 50% ownership in UIP, any

role in the corporate affairs and governance of UIP, and any real visibility into the considerable

financial success of the Company, Schwat Realty has aided and abetted the Director Defendants'

breaches of their fiduciary duties to Mrs. Coster.

136.     Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at

trial, from Schwat Realty's aiding and abetting of the Director Defendants' breaches of their

fiduciary duties.

### COUNT IX
### Derivative Claim for Aiding and Abetting Breaches of Fiduciary Duty
### (Against Schwat Realty LLC)

137.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 136

above as if fully set forth herein.

138.     At all relevant times, the Director Defendants, as members of the Board of

Directors, owed equitable fiduciary duties—including the duties of good faith and loyalty—to

UIP and its non-controlling shareholder.

139.     Since at least April 2015, the Director Defendants have breached their fiduciary

duties to UIP and its shareholders in multiple respects, as described above.  Schwat Realty

knowingly participated in—indeed, actively encouraged, if not directed—each of those breaches

by the Directors Defendants of their fiduciary duties to UIP.   Schwat Realty did so because each

of those wrongful acts and omissions directly benefitted Defendant Schwat, the sole member of Schwat Realty, to the detriment of UIP and its non-controlling shareholder.

140.    By actively participating in the Director Defendants' longstanding scheme to deny UIP's non-controlling shareholder any financial remuneration from her 50% ownership in UIP, any role in the corporate affairs and governance of UIP, and any real visibility into the considerable financial success of the Company, Schwat Realty has aided and abetted the Director Defendants' breaches of their fiduciary duties to UIP and its non-controlling shareholder.

141.    UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from Schwat Realty's aiding and abetting of the Director Defendants' breaches of their fiduciary duties.

142.    In addition to compensatory damages, UIP should be awarded punitive damages against Schwat Realty in an amount to be proved at trial because its oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards UIP's non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

### COUNT X
### Aiding and Abetting Breaches of Fiduciary Duty
### (Against Defendants Schwat, Bonnell, and Cox)

143.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 142 above as if fully set forth herein.

144.    At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to Mrs. Coster as a shareholder of UIP.

145.     Since at least April 2015, Schwat Realty has breached its fiduciary duties to Mrs. Coster, as described above.  The Director Defendants knowingly participated in—indeed, actively encouraged—each of those breaches by Schwat Realty of its fiduciary duties to Mrs. Coster.   The Director Defendants did so because the freeze-out of Mrs. Coster from the corporate governance of UIP and from any participation in the financial success of the Company directly benefitted them.  Additionally, each of the Director Defendants benefitted personally (or through wholly-owned intermediary entities) from Schwat Realty having caused UIP (and UIP PM and UIP GC), in substantial part, to use its employees, offices, and other corporate resources to further Schwat Realty's own financial investments—and/or those of its sole member, Defendant Schwat—that confer no benefit to Mrs. Coster, including the projects identified in Paragraph 30 above.

146.     By actively participating in Schwat Realty's longstanding scheme to deny Mrs. Coster, an elderly widow, any financial remuneration from her 50% ownership in UIP and any role in the corporate governance of UIP, and by participating in the diversion of corporate resources and opportunities for the benefit of Schwat Realty and to the detriment of Mrs. Coster, each of the Director Defendants has aided and abetted Schwat Realty's breaches of its fiduciary duties to Mrs. Coster.

147.     Mrs. Coster has suffered substantial pecuniary harm, in amounts to be proved at trial, from the Director Defendants' aiding and abetting of Schwat Realty's breaches of their fiduciary duties.

**COUNT XI**
**Derivative Claim for Aiding and Abetting Breaches of Fiduciary Duty**
**(Against Defendants Schwat, Bonnell, and Cox)**

148.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 147 above as if fully set forth herein.

149.    At all relevant times, as the controlling shareholder, Schwat Realty has owed fiduciary duties—including the duties of good faith and fair dealing—to UIP and its non-controlling shareholder.

150.    Since at least April 2015, Schwat Realty has breached its fiduciary duties to UIP and its non-controlling shareholder, as described above.  The Director Defendants knowingly participated in—indeed, actively encouraged—each of those breaches by Schwat Realty of its fiduciary duties to UIP and its non-controlling shareholder.   The Director Defendants did so because the freeze-out of Mrs. Coster from the corporate governance of UIP and from any participation in the financial success of the Company directly benefitted them.  Additionally, each of the Director Defendants benefitted personally (or through wholly-owned intermediary entities) from Schwat Realty having caused UIP (and UIP PM and UIP GC), in substantial part, to use its employees, offices, and other corporate resources to further Schwat Realty's own financial investments—and/or those of its sole member, Defendant Schwat—that confer no benefit to Mrs. Coster, including the projects identified in Paragraph 30 above.

151.    By actively participating in Schwat Realty's longstanding scheme to deny UIP's non-controlling shareholder any financial remuneration from her 50% ownership in UIP and any role in the corporate governance of UIP, and by participating in the diversion of corporate resources and opportunities for the benefit of Schwat Realty and to the detriment of UIP and its non-controlling shareholder, each of the Director Defendants has aided and abetted Schwat Realty's breaches of its fiduciary duties to UIP and its non-controlling shareholder.

152.     UIP and its non-controlling shareholder have suffered substantial pecuniary harm, in amounts to be proved at trial, from the Director Defendants' aiding and abetting of Schwat Realty's breaches of their fiduciary duties.

## COUNT XII
## Civil Conspiracy
## (Against All Defendants)

153.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 152 above as if fully set forth herein.

154.     At all relevant times, each Director Defendant had fiduciary duties to Mrs. Coster in her capacity as a stockholder of UIP.

155.     Each Defendant, acting in combination and in concert with the other Defendants, knowingly undertook unlawful acts and omissions with the intent to, and effect of, breaching fiduciary duties owed to Mrs. Coster and violating her legal rights as a stockholder in UIP, including, without limitation, as described in Paragraph 30 above.

156.     In so doing, Defendants conspired to violate Mrs. Coster's legal rights as a UIP stockholder, to breach fiduciary duties owed to her, and to place their own self-interests above Mrs. Coster's interests, causing Mrs. Coster to suffer pecuniary harm in an amount to be proved at trial.  Accordingly, each Defendant is jointly and severally liable for the acts of the other Defendants committed in furtherance of the conspiracy.

157.     In addition to compensatory damages, Mrs. Coster should be awarded punitive damages against all Defendants on this Count in an amount to be proved at trial because their oppressive and wrongful conduct towards Mrs. Coster has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards Mrs. Coster and in willful disregard of her rights as a stockholder of UIP.

## COUNT XIII
### Derivative Claim for Civil Conspiracy
### (Against All Defendants)

158.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 157 above as if fully set forth herein.

159.    At all relevant times, each Director Defendant had fiduciary duties to UIP and its shareholders.

160.    Each Defendant, acting in combination and in concert with the other Defendants, knowingly undertook unlawful acts and omissions with the intent to, and effect of, breaching fiduciary duties owed to UIP and its non-controlling shareholder and violating their legal rights, including, without limitation, as described in Paragraph 30 above.

161.    In so doing, Defendants conspired to violate the legal rights of UIP and its non-controlling shareholder, to breach fiduciary duties owed to them, and to place their own self-interests above UIP and its non-controlling shareholder, causing UIP and its non-controlling shareholder to suffer pecuniary harm in an amount to be proved at trial.  Accordingly, each Defendant is jointly and severally liable for the acts of the other Defendants committed in furtherance of the conspiracy.

162.    In addition to compensatory damages, UIP should be awarded punitive damages against all Defendants on this Count in an amount to be proved at trial because their oppressive and wrongful conduct towards UIP and its non-controlling shareholder has been outrageous, grossly fraudulent, or reckless, and undertaken with actual malice towards UIP's non-controlling shareholder and in willful disregard of her rights as a stockholder of UIP.

## COUNT XIV
### Derivative Claim for Declaratory Judgment
### (Against All Defendants)

163.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 162 above as if fully set forth herein.

164.     At all relevant times, each Defendant had fiduciary duties to UIP and Mrs. Coster in her capacity as a stockholder of the Company.  Each Defendant has breached his (or its) fiduciary duties to UIP and Mrs. Coster in bad faith and contrary to the best interests of the Company.  Each of the Defendants has acted intentionally in breaching fiduciary duties owed to UIP and Mrs. Coster, with the purpose of advancing their own pecuniary interests—and the pecuniary interests of Defendant Schwat and Schwat Realty—to the detriment of UIP and Mrs. Coster.  Defendants have done so in conscious disregard of their fiduciary duties toward UIP and Mrs. Coster and knowingly and intentionally violated Mrs. Coster's legal rights as a UIP stockholder, and are thus barred under Delaware law from being indemnified by UIP for their bad-faith conduct.

165.     Consequently, a declaratory judgment should be entered barring Defendants from seeking or accepting indemnification by UIP, directly or indirectly, for any judgment against any one or more of them in this action.

## COUNT XV
### Derivative Claim for Injunctive Relief
### (Against All Defendants)

166.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 165 above as if fully set forth herein.  At all relevant times, each Defendant had fiduciary duties to UIP and Mrs. Coster in her capacity as a stockholder of the Company.  Each Defendant has breached his (or its) fiduciary duties to UIP and Mrs. Coster in bad faith and contrary to the best

interests of the Company.  Each of the Defendants has acted intentionally in breaching fiduciary duties owed to UIP and Mrs. Coster, with the purpose of advancing their own pecuniary interests—and the pecuniary interests of their respective LLC entities (Schwat Realty, Bonnell Realty, and Cox Realty)—to the detriment of UIP and Mrs. Coster.  Defendants have done so in conscious disregard of their fiduciary duties toward UIP and Mrs. Coster and knowingly and intentionally violated Mrs. Coster's legal rights as a UIP stockholder, and are thus barred under Delaware law from being indemnified by UIP for their bad-faith conduct.

167.   Consequently, an injunction should issue (a) prohibiting each Defendant from seeking or accepting indemnification, directly or indirectly, from UIP for any judgment in this action, and (b) requiring, in the event UIP advances or reimburses attorneys' fees and costs for any one or more Defendants in connection with this action, that each Defendant reimburse UIP for the total amount of such advanced or reimbursed attorneys' fees and costs within thirty days of entry of judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

A.     Enter judgment against Defendants, jointly and severally, in an amount to be established at trial.

B.     Order Defendants to pay (exclusively from Defendants' own funds, without reimbursement or pass through, directly or indirectly, from UIP or any of its subsidiaries), jointly and severally, Plaintiff's reasonable attorneys' fees and costs in connection with the preparation, filing, and prosecution of this action.

C.     Award Plaintiff pre-judgment interest at the maximum rate established by law.

D.      Declare that Defendants are barred under Delaware law from being indemnified by UIP, directly or indirectly, for any judgment against any one or more of them in this action as described in Paragraphs 164 and 165 above.

E.      Enter the injunction described in Paragraph 167 above.

F.      Order such other relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Michael K. Ross
Michael K. Ross (Bar No. 458573)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, N.W., Suite 740
Washington, D.C. 20004
Tel: (202) 737-3373
Fax: (202) 735-5071
mross@aegislawgroup.com

*Counsel for Marion Coster*

Dated: June 23, 2021

## RULE 23.1 VERIFICATION

I, Marion Coster, am the named Plaintiff to this action. I am a shareholder of UIP Companies, Inc. ("UIP"), and have been the beneficial owner of UIP stock at all times throughout the period during which the wrongful conduct alleged in the Complaint occurred. I have reviewed the allegations made in this VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF and state that the matters stated therein about which I have personal knowledge are true, and that the other matters stated therein are true and accurate to the best of my knowledge, information, and belief, based in part upon the investigation conducted by counsel.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22 day of June, 2021.

_____
Marion Coster