IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARION COSTER, *et al.*,            ) <br> ) <br> *Plaintiffs*,            ) <br> ) <br> v.            ) <br> ) <br> STEVEN F. SCHWAT, *et al.*,            ) <br> ) <br> *Defendants*.            ) <br> _____) | Civil Action No. 18-CV-1995-APM |

## **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL**

### **INTRODUCTION**

Binding precedent in this Circuit requires a "corporation and individual defendants be separately represented" in a derivative suit. *Murphy v. Washington Am. League Base Ball Club, Inc.*, 324 F.2d 394, 398 (D.C. Cir. 1963) (citing *Milone v. English*, 306 F.2d 814, 817 (D.C. Cir. 1962)). The only exception recognized by the D.C. Circuit is when a case is at the early stages of the litigation—that is, pre-discovery. *See Yablonski v. United Mine Workers of Am.*, 448 F.2d 1175, 1182 (D.C. Cir. 1971). As the Court is well aware, this case is now in active discovery, with several discovery disputes pending before the Court. Pillsbury does not cite a single in-circuit case to the contrary. It instead asks this Court to create a novel exception to the D.C. Circuit's longstanding prohibition against the simultaneous representation of a corporation and its board in shareholder derivative suits.

Ignoring the relevant legal analysis, Pillsbury lards its opposition with false—and irrelevant—*ad hominem* attacks about Mrs. Coster and her supposed motives, in an apparent effort to deflect from its own improper conduct here. Contrary to Pillsbury's attacks, Mrs. Coster cares deeply about the UIP's financial success because she is a rightful fifty-percent stockholder. It is

Defendants—not Mrs. Coster—who have chosen to suppress UIP's profits, operate UIP at break-even, and run UIP for the benefit of SPEs rather than UIP's stockholders, in violation of their fiduciary duties under Delaware law. *See eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 34 (Del. Ch. 2010) (directors' fiduciary duties require them to "promote the value of the corporation for the benefit of its stockholders").

Pillsbury also tries to distract by raising extraneous and irrelevant issues from the Delaware action. Pillsbury fails to inform the Court, however, that in June of this year, the Delaware Supreme Court unanimously reversed the trial court ruling in Defendants' favor and remanded for further proceedings. *See generally Coster v. UIP Companies, Inc.*, 255 A.3d 952 (Del. 2021). In so doing, the *en banc* Supreme Court highlighted nine different "undisputed facts or facts found by the [trial court] support[ing] the conclusion . . . that the UIP board approved the Stock Sale for inequitable reasons" under Delaware law. *Id.* at 963. That Pillsbury advised Defendants to orchestrate that Stock Sale—which is also the subject of Count III of the present action—only further underscores the depth of Pillsbury's conflict in continuing to represent UIP here. *See* 2nd Am. Compl. ¶¶ 101-105, ECF No. 48.

Mrs. Coster respectfully urges the Court to reject Pillsbury's attempt to create new law, disregard Pillsbury's spurious bluster about Mrs. Coster's supposed motives, and hold Pillsbury to the same standard as every other law firm representing directors in a derivative suit in this Court.

## ARGUMENT

### I. D.C. CIRCUIT PRECEDENT PROHIBITS PILLSBURY'S DUAL REPRESENTATION

Pillsbury does not meaningfully dispute—indeed, they cannot dispute—that the law of this Circuit prohibits dual representation in derivative suits except during the early stages of the litigation. In this Circuit, it is "well established" the role of "regular outside counsel for the

corporation usually becomes a passive one" and **"no corporate counsel purports to represent the individual officers involved**" in a derivative suit.  *Yablonski*, 448 F.2d at 1181 (emphasis added).  In defiance of governing case law, Pillsbury purports to do just that, despite their obviously substantial "ties of loyalty and confidentiality to the individual officers."  *Id.*[1]

Pillsbury's conflicted representation of both UIP and the Individual Defendants is particularly pernicious because Pillsbury currently controls whether to turn over evidence of the Individual Defendants' misconduct vis-à-vis UIP—as highlighted by the pending discovery disputes before the Court.  *See Yablonski*, 448 F.2d at 1179 ("Whether facts are discovered and legal positions taken which would create such a conflict of interest between the [union] position and the position of the individual defendant . . . may well be determined by the approach which counsel for the [union] takes in this case").  UIP "needs the most objective counsel obtainable" for "the exploration and the determination of the truth or falsity of the charges brought by" Mrs. Coster against UIP's directors, but with Pillsbury currently representing both the Company and the Individual Defendants, objectivity is impossible.  *Id.*

Attempting to avoid the unmistakable directive from this Circuit's precedent, Pillsbury cites unpublished New York cases in asking this Court to create a novel exception for closely-held corporations.  *See* Defs.' Opp. 5-6.  But New York case law on dual representation in derivative suits is the ***opposite*** of the binding D.C. Circuit precedent relied upon by Mrs. Coster.  For instance,

---

[1] Pillsbury cites *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 204 (D.D.C. 2013), for the proposition that Mrs. Coster must meet the "extraordinary" burden of showing failure to disqualify would "taint the trial," but in shareholder derivative suits involving dual representations of corporation and its board, courts in this Circuit bypass the "extraordinary burden" analysis, which applies only outside of the derivative suit context.  *See, e.g.*, *Yablonski*, 448 F.2d at 1181 ("The corporation has certain definite institutional interests to be protected, and the counsel charged with this responsibility should have ties on a personal basis with neither the dissident stockholders nor the incumbent officeholders.").

*Kleeberg*—the primary case relied on by Pillsbury—starts with the premise that "both the Second Circuit and New York courts *reject* the routine disqualification of attorneys representing both companies and their officers in derivative actions." *Kleeberg v. Eber*, No. 16CV9517LAKKHP, 2019 WL 2284724, at *6 (S.D.N.Y. May 29, 2019) (emphasis added). In sharp contrast to New York law, "*Murphy v. Washington American League Base Ball Club* established for [the D.C. Circuit] the proposition that the corporation and an individual defendant *cannot* be represented by the same counsel." *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Hoffa*, 242 F. Supp. 246, 256 (D.D.C 1965) (emphasis added).

Even so, the facts of *Kleeberg* are entirely unlike the present case. In permitting dual representation, that court emphasized that the corporate entities before it "have no cash flow and are no longer operational," such that retaining separate counsel "would pose a significant financial burden." *Kleeberg*, 2019 WL 2284724, at *6. Another unpublished New York case cited by Pillsbury likewise involved non-operational entities. *See Evans v. Perl*, 19 Misc. 3d 1119(A), 862 N.Y.S.2d 814 (Table) (Sup. Ct. 2008) ("Since many of these entities are no longer ongoing operations and/or produce no income, the issue of expenses is a significant one."). Far from a defunct entity, UIP generates annual revenues of over $40 million, with sufficient funds to pay its directors millions of dollars in "consulting fees"—on top of their generous salaries. *See* Pls.' Mot. Compel at 3-4, ECF No. 49.

Pillsbury then posits that if UIP had separate counsel, "that counsel would necessarily still report to the Individual Defendants regarding the scope of their engagement"—a peculiar argument which presupposes that separate counsel would ignore their ethical duties to the Company and the Court to abide by discovery and other obligations—and necessarily act in furtherance of the Individual Defendants' personal interests. Defs.' Opp. 6. The D.C. Circuit has

already addressed this concern, recognizing that although "any counsel to represent the [union] selected by [the union president] will be to some degree under his control," because "[s]uch counsel would never be professionally obligated to consider [the union president's] personal interests," the union would still benefit from separate representation because "such counsel will still only have [obligations to] one client—the [union]." *Yablonski*, 448 F.2d at 1182 (requiring separate counsel).

To be sure, there is always some risk that a company's counsel might be influenced by the directors' personal interests during the course of their representation of the company, but the mere presence of that risk has not prevented the D.C. Circuit from mandating separate counsel for companies and their directors in shareholder derivative suits, and it should not prevent the Court from requiring separate counsel here.

## II. THE PREJUDICE TO MRS. COSTER IS MATERIAL

Despite Pillsbury's insistence that the prejudice to Mrs. Coster from Pillsbury's improper dual representation is "groundless," in fact, the harm to Mrs. Coster is very real for a pair of reasons.

*First*, Pillsbury protests that Mrs. Coster is not prejudiced because her discovery requests are "expansive"—a tenuous assertion, given that much of the requested information is readily available to UIP and would not be especially difficult produce—and also because the requests purportedly seek "sensitive" and "invasive" information about non-UIP entities "in which Mrs. Coster has no interest." Defs' Opp. 8. This is an unintentionally revealing admission by Pillsbury, and it perfectly demonstrates the tension of Pillsbury's dual representation: the "sensitivity" of information about ***non-UIP entities and individuals*** (that is, the SPEs) should not influence the decision-making of counsel whose duty should be to UIP and UIP only, as UIP—standing alone—

has no interest in keeping ***non-UIP*** documents confidential from UIP's shareholders. That Pillsbury has let privacy the concerns of others govern its decision-making about what documents ***UIP*** should and should not produce to Mrs. Coster proves exactly why separate counsel is urgently necessary here.

***Second***, Pillsbury scoffs at Mrs. Coster's well-founded concern that Pillsbury has failed to delineate the legal fees incurred in representing each client, though it concedes that there is "significant overlap of fees incurred on behalf of the Company and the Individual Defendants." Defs.' Opp. 9. Pillsbury's dual representation thus poses a significant obstacle to UIP's potential recovery of attorneys' fees incurred on behalf of the Individual Defendants. *See Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D.N.J. 1977) (recognizing the importance of separate counsel for determining whether the corporation has expended funds on behalf of the directors in violation of 8 *Del. C.* § 145).

Pillsbury's only response is that it would not be "proportional" to have separate counsel—but since companies in shareholder derivative suits typically play a mostly passive role, UIP would be able to recover more in attorneys' fees from the Individual Defendants than UIP itself incurred by having separate counsel. Only the Individual Defendants, not UIP, benefit from Pillsbury's continued dual representation.

### III. PILLSBURY IS NOT A NEUTRAL ARBITER OF UIP'S BEST INTERESTS

The inherent conflict of interest in Pillsbury's dual representation is most stark when Pillsbury is required to evaluate whether to produce, during discovery, documents and information indicating misconduct by the Individual Directors. At every turn in this action and in the other cases between the parties, Pillsbury has fought to conceal vital discovery from Mrs. Coster for the benefit of the Individual Defendants.

The Montgomery County Circuit Court litigation presented a notable example. In that case (which involved Mrs. Coster and the same Individual Defendants here), Pillsbury delayed producing the most crucial document—an appraisal which shows that Defendants sold the Kiley to themselves at a nearly $17 million discount—until just five days before the end of discovery and after every deposition had been taken. *See* Pls.' Reply – Mot. for Leave to Amend at 4, ECF No. 41. Though Pillsbury belatedly produced that appraisal, Pillsbury refused to produce a single email about it. Then, at a September 2021 oral argument on Defendants' summary judgment motion in that action, Pillsbury argued that the appraisal was not an obstacle to summary judgment because "there's no evidence Schwat and Bonnell even knew about it."[2] *See* Ex. 1, Tr. of Summ. J. Hearing at 29.

Mrs. Coster now knows that statement to be false. Less than two weeks ago, the appraiser—Newmark, a commercial real estate advisory firm—produced documents in response to a subpoena issued by Mrs. Coster in this matter.[3] That production contained numerous emails between Defendants and Newmark demonstrating Defendants' unequivocal involvement in the appraisal process: Newmark described Bonnell as their "contact person" for the appraisal, UIP provided Newark with the documents and information that it relied on in conducting the appraisal, and UIP even requested a "reliance letter" from Newmark to give to an investor about the appraisal.

---

[2] The Montgomery County Circuit Court denied Defendants' summary judgment motion in full.

[3] Pursuant to the discussion at the status conference on December 2, counsel for Mrs. Coster has not served any additional Capitol Park Tower-related subpoenas and has told subpoena recipients who reach out that the subpoenas are being temporarily held in abeyance. Because Mrs. Coster does not have contact information of relevant personnel at the subpoena recipients, Pillsbury indicated they and their clients would proactively inform the recipients that the subpoenas were held in abeyance. Newmark made a production without first reaching out to Mrs. Coster's counsel.

*See* Exs. 3, 4, & 5.[4] Pillsbury's representation to the Maryland court was thus flatly untrue: not only did Schwat and Bonnell know about the appraisal, but their fingerprints were all over it. Pillsbury, however, had simply refused to produce any documents revealing their involvement.

Here, too, Pillsbury—in its capacity as counsel to UIP—continues to do the Individual Defendants' bidding. Just last week, Pillsbury served UIP's objections to discovery requests relating to Capitol Park Tower and the Kiley. Though Mrs. Coster's requests were narrowly tailored, UIP objected in full to every single request and refused to agree to produce even a single document—including any communications about the appraisal. *See* Ex. 2, UIP's Responses and Objections to Plaintiffs' Fourth Requests for Production.[5] If Mrs. Coster had to rely exclusively on Pillsbury's productions and representations, she would have never known the substantial role Defendants played with the appraisal, even though that appraisal is central to this litigation. *See* 2nd Am. Compl. ¶¶ 59, 60, 66, 114, 120, 130, ECF No. 48.

Separate counsel, by contrast, would have no incentive to withhold inculpatory evidence. To the contrary, there is no reason to presume that separate counsel would not perform its ethical duty to provide UIP with the "evaluation and representation of its institutional interests by independent counsel, unencumbered by potentially conflicting obligations to any defendant officer," to which UIP is entitled. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Hoffa*, 242 F. Supp. 246, 256 (D.D.C 1965). Pillsbury's suggestion that UIP should, in

---

[4] These three exhibits are attached to the contemporaneously filed Motion for Leave to File Under Seal.

[5] Counsel are continuing to negotiate about the offer from Defendants regarding Capitol Park Towers, but no agreement has been reached.

the alternative, proceed unrepresented so as to avoid "ordering the costly retention of separate counsel" is thus unworkable and, given the small cost to UIP, unjustified.[6]  Defs.' Opp. n.5.

**IV.   PILLSBURY'S AD HOMINEM ATTACKS AGAINST MRS. COSTER ARE RED HERRINGS AND DO NOT EXCUSE PILLSBURY'S CONFLICT OF INTEREST**

As a latch-ditch effort to stave off disqualification, Pillsbury lobs a series of *ad hominem* attacks against Mrs. Coster, mischaracterizing the claims and the record in the Delaware action, and accusing Mrs. Coster of "not caring" about UIP—an utterly ironic accusation from Defendants, who have effectively conceded that that they run the Company for the benefit of the SPEs, and who have never made (and absent legal intervention, will never make) a single distribution to Mrs. Coster.

**A.   To "Care" About A Corporation Is To Care About Its Shareholders**

Pillsbury's favorite refrain—deployed in nearly every single one of their filings, no matter how irrelevant to the issue at hand—is that Mrs. Coster "does not care" about the interests of UIP.[7] This pronouncement about Mrs. Coster's supposed feelings towards UIP is clever rhetoric but does not withstand scrutiny.  To "care" about a Company is, definitionally, to care about maximizing its value for the shareholders—which Defendants have failed to do.  *See eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 34 (Del. Ch. 2010) (directors' fiduciary duties require them to "promote the value of the corporation for the benefit of its stockholders").

---

[6] No depositions have been taken yet in this matter, and without its own counsel, a 30(b)(6) deposition of UIP would likely result in Pillsbury playing the role of *de facto* corporate counsel.

[7] In making this assertion, Pillsbury repeatedly weaponizes a single out-of-context email sent five years ago—not by Mrs. Coster or any of her representatives, but by Anne Pace, the executor of Wout Coster's estate.  In that same email, Ms. Pace noted that Mrs. Coster cares about "having to pay her monthly bills" and "receiving the benefits promised her by her husband"—that is, she cares about receiving the value of her 50% ownership of UIP, of which Defendants have entirely deprived her since her late husband's death.  *See* ECF No. 39-3.

Since Wout Coster's death in April 2015, Defendants Schwat and Bonnell have run UIP entirely for their own benefit and the SPEs they are invested in—receiving massive salaries, bonuses, and "consulting fees" from UIP; exerting complete control over UIP's finances; leveraging its cash and assets for their own purposes; diluting Mrs. Coster's ownership interest; and intentionally zeroing the Company's profits. Defendants have shrugged their shoulders and insisted to Mrs. Coster that UIP simply doesn't make very much money—all the while privately instructing UIP's management that "***the less profit [UIP makes] the better,***" *see* Pls.' Sealed Ex. 4, ECF No. 50-4, and explaining to their own advisors that the "strategy behind UIP Companies is to effectively operate at a break-even level of profits, ***so the underlying real estate investments are more profitable and more valuable***." *See* Pls.' Sealed Ex. 2, ECF No. 50-2.

In so doing, Defendants have deprived Mrs. Coster of all benefits of her ownership stake in UIP—a particularly cruel state of affairs considering that Wout Coster had hoped that Mrs. Coster would be able to rely on her stake in UIP for financial support after his death. Mrs. Coster does, in fact, care deeply about the Company and its financial performance; she is after all, its rightful fifty-percent owner. It is risible to suggest, then, that Mrs. Coster is the one who has somehow failed to "care" about the Company. This meaningless refrain should be rejected.

**B. Pillsbury Essentially Admitted Its Conflict of Interest by Withdrawing from Representing UIP in the Delaware Action**

In the Delaware litigation—the only other case between the parties involving UIP—Pillsbury withdrew from representing of the Company during discovery, and UIP hired separate counsel. In doing so, Pillsbury tacitly acknowledged what is plain to see: it has an inherent conflict of interest in representing both UIP and its directors. Pillsbury distorts the record in describing the decision of UIP's Delaware counsel to excuse himself: UIP's Delaware counsel only sought to excuse himself ***after*** discovery ended and ***only for trial***, implicating none of the concerns raised

by Mrs. Coster here. *See* Defs.' Ex. A, ECF No. 58-1. Thus, in the Delaware case, UIP's Delaware counsel (i) represented UIP through the duration of discovery, (ii) responded to discovery requests on behalf of UIP, and (iii) necessarily maintained separate bills for UIP. Likely in part because of UIP's separate counsel, only one discovery issue was presented to the Delaware Court for a ruling—whereas here, Pillsbury's continued refusal to produce relevant information has repeatedly forced Mrs. Coster to seek relief from the Court. Mrs. Coster did not object to separate counsel excusing himself from trial in Delaware, and she would not object to separate counsel doing so here either, if that counsel so requested.

Pillsbury also makes the irrelevant but demonstrably false assertion that the Delaware case involved "most, if not all, of the very claims [Mrs. Coster] makes in her derivative claims here"—a contention already rejected by this Court in denying Defendants' motion for summary judgment on *res judicata* grounds. *See* Nov. 14, 2020 Order at 6, ECF No. 31 ("[The transaction at the heart of each claim is different. The Delaware stock sale claim centers on the sale itself, as well as Defendants' reliance on a valuation that allegedly failed to account for UIP's pricing model and business structure. In contrast, Plaintiff's current fiduciary breach claim rests on the impropriety of [UIP's] pricing and business structure decisions themselves."). In fact, Pillsbury's conduct during its representation of the Individual Defendants in the Delaware action further highlights the need for separate counsel here. Pillsbury contemporaneously advised Defendants on the sham stock sale to Defendant Bonnell that is the subject of Count III in this action, *see* 2nd Am. Compl. ¶¶ 101-105, ECF No. 48, but they are currently withholding communications with the Individual Defendants on that issue as privileged (though privilege was waived when the Individual Defendants testified about Pillsbury's advice at trial in Delaware). *See* ECF No. 53-8 (letter from Pillsbury conceding "Mr. Schwat and the Company have admitted that the Company consulted

with counsel while considering the Stock Sale" but refusing to produce the communications). Pillsbury thus has skin in the game in defending the propriety of the stock sale. They are hardly able to provide neutral legal counsel, free from any conflict of interest, to UIP when it was ***Pillsbury's own advice*** to UIP's directors that gave rise to the very breach of fiduciary duty claim at issue. *See* Restatement (Third) of the Law Governing Lawyers § 131 (2000) ("In a derivative action, if the advice of the lawyer acting for the organization was an important factor in the action of the officers and directors that gave rise to the suit, it is appropriate for the lawyer to represent, if anyone, the officers and directors and for the organization to obtain new counsel.").

### V. MRS. COSTER'S MOTION IS TIMELY UNDER THIS CIRCUIT'S CLEAR PRECEDENT

Lastly, Pillsbury vacillates on whether Mrs. Coster's disqualification motion is premature or tardy. After initially insisting that Mrs. Coster's withdrawal request was too hasty, Pillsbury now argues that Mrs. Coster's motion comes too late. That argument is meritless: the timing of the instant motion was driven by Pillsbury's own conduct in discovery, and aligns squarely with D.C. Circuit precedent on this issue.

As Pillsbury is well aware, Mrs. Coster first alerted Pillsbury to its conflict of interest and requested that Pillsbury withdraw on November 5, 2018—shortly after this action was filed in August 2018. *See* Defs.' Ex. B, ECF No. 58-2 (Nov. 5, 2018 letter from M. Ross to D. Baum). But Pillsbury's conflict did not ripen until discovery, when Pillsbury—at Defendants' behest—refused to produce numerous categories of relevant documents in UIP's sole possession. *See* Pls.' Ex. 1, ECF No. 54-1 ("The problems presented by your firm's improper representation of both the individual Defendants and the Company are highlighted by your firm's preparation of the Company's responses and objections to Plaintiffs' First Set of Requests for Production.").

After receiving Mrs. Coster's renewed request for Pillsbury's withdrawal in September of this year, Pillsbury responded that the action was in its "preliminary stages" and cited case law permitting dual representation before answers and interrogatories responses are filed. Pls.' Ex. 2 at 4, ECF No. 54-2 (September 24, 2021 Pillsbury letter quoting *Yablonski* to argue disqualification was proper only "after establishing the nature of the lawsuit by interrogatories and filing answers"). Mrs. Coster then answered UIP's initial interrogatories and reiterated her request that Pillsbury withdraw from its dual representation; after waiting two weeks to respond, Pillsbury tried to convince Mrs. Coster to delay moving for disqualification. *See* Pls.' Ex. 3, ECF No. 54-3 (November 2021 email chain with Pillsbury). Seeking to avoid any further delay, Mrs. Coster then—in Defendants' own words—"promptly filed this motion to disqualify Pillsbury." Defs.' Opp. 4, ECF No. 58.

In a sudden about-face, Pillsbury now contends that Mrs. Coster has waited **too long** to file this motion. That argument is contradicted by clear D.C. Circuit precedent, which confirms that withdrawal from a conflicted representation in a derivative is appropriate *after* discovery begins, and not earlier. *See Yablonski*, 448 F.2d at 1182 (the "proper" time for counsel from a conflicted representation is "after establishing the nature of the lawsuit by interrogatories and filing answers"); *see also Doe #1 v. Am. Fed'n of Gov't Emps.*, No. CV 20-1558 (JDB), 2021 WL 3550996, at *5 (D.D.C. Aug. 11, 2021) (relying on *Yablonski* to deny motion to disqualify in part because "discovery has not begun"). Pillsbury's cited cases—*Milone v. English*, 306 F.2d 814 (D.C. Cir. 1962) and *Int'l Bhd. of Teamsters v. Hoffa*, 242 F. Supp. 246 (D.D.C 1965)—both pre-date *Yablonski* and are thus inapposite. *See Doe #1 v. Am. Fed'n of Gov't Emps.*, No. CV 20-1558 (JDB), 2021 WL 3550996, at *4-5 (D.D.C. Aug. 11, 2021) ("[T]he D.C. Circuit carved out an

exception" to *Milone v. English* in *Yablonski* by "holding that dual representation of the union and union officials was permissible at the early stages of the litigation").

In sum, the timing of this motion is both legally proper and practically sound: having initially given Pillsbury the benefit of the doubt, it has now become clear that Pillsbury cannot continue to represent UIP in this litigation without causing material harm to Mrs. Coster's interests. UIP must have separate counsel.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court order that Pillsbury be disqualified from representing UIP in this matter.

Dated: December 22, 2021

Respectfully submitted,

**AEGIS LAW GROUP LLP**

By: /s/ *Michael Ross*
Michael K. Ross (D.C. Bar No. 458573)
Serine Consolino (D.C. Bar No. 1033847)
Branden Lewiston (D.C. Bar No. 252550)
801 Pennsylvania Ave., N.W. – Ste. 740
Washington, DC 20004
Tel: (202) 737-3373
mross@aegislawgroup.com
sconsolino@aegislawgroup.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2021, Plaintiffs' Reply in Support of Motion to Disqualify Counsel was served via the Court's CM/ECF system in the above-captioned case upon all counsel of record registered through that system.

/s/ *Michael Ross*